IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| GALEN INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Civil Action No.: |
| | ) | |
| VITTORIO GUERRIERO, M.D.; and | ) | |
| LEE A. HEDRICKS, Independent | ) | |
| Administrator of the ESTATE OF WALTER | ) | |
| L. BRUCE, deceased, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR RESCISSION AND DECLARATORY RELIEF**

Plaintiff, GALEN INSURANCE COMPANY, for its Complaint for Rescission and Declaratory Relief against Defendants VITTORIO GUERRIERO M.D., and LEE A. HEDRICKS, Independent Administrator of the ESTATE OF WALTER L. BRUCE, deceased, states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C.A. §1332 and 28 U.S.C.A. § 2201 based on diversity of citizenship between the Plaintiff and Defendants.

2. The matter in controversy in this cause exceeds $75,000. The insurance policy at issue in this matter has a limit of liability of $1 million per claim and $3 million in the aggregate. The underlying claimants seek damages against the insured in excess of $50,000. The costs and fees to defend against the lawsuit will exceed $25,000. Therefore, the amount in controversy exceeds $75,000.

3. Venue is proper in this matter because certain events giving rise to this matter occurred in this judicial district and the Defendants are subject to the personal jurisdiction of this Court. 28 U.S.C.A. §1391.

## THE PARTIES

4. Plaintiff, Galen Insurance Company ("Galen") is a Missouri corporation with its principal place of business in St. Louis, Missouri.

5. Defendant Vittorio Guerriero, M.D. ("Dr. Guerriero") is an individual residing in Illinois, who has or currently does practice medicine in Illinois.

6. Defendant Lee A. Hedricks is an individual residing in Illinois. Mr. Hedricks is joined in this suit as a necessary party defendant.

## FACTUAL ALLEGATIONS

### Prior Suspension and Revocation of Dr. Guerriero's Privileges at Lincoln Park Hospital

7. Previously, in January of 2005, Guerriero had surgical privileges at Lincoln Park Hospital, which were revoked.

8. On January 20, 2005, Guerriero was informed that his privileges to perform gynecological surgery at Lincoln Park Hospital were revoked.

9. On January 21, 2005, in the course of performing surgery to remove an abdominal tumor from a patient, Guerriero excised an ovary.

10. Shortly thereafter, Guerriero's hospital privileges were suspended. After peer review, the suspension was upheld.

### *Criminal Investigation of Dr. Guerriero*

11. Beginning in or before 2012, Guerriero performed surgeries at Sacred Heart Hospital in Chicago, Illinois, including tracheostomies.

12. In 2011, the FBI began an investigation of the executives, administrators and physicians associated with Sacred Heart Hospital. As part of the investigation, the FBI recorded telephone calls and in-person conversations.

13. On March 5, 2013, investigators from U.S. Centers for Medicare and Medicaid Services and the State of Illinois also arrived at Sacred Heart Hospital to conduct an investigation of the hospital's intubations and tracheotomies, and quality assurance and performance improvement protocols.

14. On April 15, 2013, criminal proceedings were instituted against certain owners and doctors associated with Sacred Heart Hospital. By criminal complaint, the United States of America charged multiple defendants including Edward J. Novak, Roy M. Payawal, Venkateswara R. Kuchipudi, Percy Conrad May Jr., Subir Maitra and Shanin Moshire with having participated in a kickback conspiracy, in violation of Title 18, U.S.C. §371. A true and accurate copy of Criminal Complaint no. 13CR312, filed in the United States District Court for the Northern District of Illinois ("2013 Criminal Complaint") is attached hereto as Exhibit A.

15. The 2013 Criminal Complaint included the sworn affidavit of F.B.I. Officer Cathy A. Barbour. See Exhibit A. Barbour attested that the FBI was investigating the executives, administrators and physicians associated with Westside Community Hospital, Inc., doing business as Sacred Heart Hospital. Barbour attested that the FBI was being assisted in the investigation by Special Agents of the United States Department of Health and Human Services, Office of Inspector General.

16. In Barbour's affidavit, she attested that these individuals engaged in a scheme to defraud Medicare and Medicaid by submitting and causing the submission of claims and the presentment of hospital cost reimbursement reports seeking payment for emergency care evaluation, testing and observation services that were not medically necessary.

17. Barbour further attested that these individuals had unnecessarily performed sedation, intubation and tracheostomy procedures on elderly and disabled patients, because of the significant reimbursement received from Medicare and Medicaid. The treating physicians

allegedly unnecessarily intubated patients, ordered the administration of high levels of sedation to the intubated patients to prevent them from breathing on their own, and then ordered a tracheotomy.

18. Barbour identified the physicians that participated in the unnecessary tracheostomy procedures as Physician D and Physician E.

19. The Barbour Affidavit indicated that Physician E had been and was continuing to be investigated, particularly regarding whether all of the tracheostomy procedures he performed were medically necessary, and for the high mortality rate for patients who received tracheostomies from Physician E.

20. Barbour first attested that the investigation revealed that none of the tracheotomy patient files reviewed as part of the investigation contained documents explaining the decision to intubate the patients, and there was no documentation explaining any efforts to wean the patients from the ventilators.

21. On or before August of 2013, Dr. Guerriero was aware that he was the "Physician E" identified in the criminal complaint.

22. On or before August of 2013, Dr. Guerriero was aware that he was publicly identified as the subject of the investigation regarding whether the procedures he performed at Sacred Heart Hospital were medically necessary.

### *The Galen Insurance Policy Application And Issuance Of The Galen Policies*

23. On or before December 24, 2013, Dr. Guerriero executed a Galen Physicians Application for Professional Liability Insurance. A true and accurate copy of Dr. Guerriero's Application is attached hereto as Exhibit B.

24. Dr. Guerriero answered "no" to the following questions:

> 13. Has any hospital or other institution ever restricted, reduced, refused, or suspended your privileges or invoked probation?

4819-1497-3989.1

4

      17.    Have you ever been investigated, charged with, or convicted of a violation of federal, state or local law other than routine traffic offenses?

      75.    Are there any claims or suits threatened or pending against you or has there been any circumstance, occurrence, incident or accident that is likely to give rise to a claim or suit that has not been reported to your current or prior insurers?

25.    In reliance upon the information and representations made to Galen by Dr. Guerriero, Galen issued claims made and reported Medical Professional Liability Insurance Policy no. IL-1342 to Vittorio Guerriero M.D. for the policy period of December 16, 2013 to December 16, 2014. The limits of liability are $1 million per claim, and $3 million in the aggregate. A true and accurate copy of the Galen Policy is attached hereto Exhibit C.

26.    On November 5, 2014, Guerriero signed and submitted a Renewal Application for Physicians and Allied Professionals. A true and accurate copy of the Renewal Application is attached hereto as Exhibit D. Guerriero checked "no" in response to the following questions:

      16.    During the past year, has any facility or organization limited or eliminated your privileges?

      17.    During the past year, have you been investigated, charged with, or convicted of a violation of a federal, state or local law other than routine traffic offenses?

      19.    During the past year, have you become aware of any claim arising from professional services you rendered?

      21.    Have you had or are you aware of a claim, suit or incident likely to become a medical malpractice claim?

27.    In reliance upon the information and representations made to Galen by Dr. Guerriero, Galen issued claims made and reported Medical Professional Liability Insurance Policy no. IL-1537 to Vittorio Guerriero M.D. for the policy period of December 16, 2014 to December 16, 2015. The limits of liability are $1 million per claim, and $3 million in the aggregate. A true and accurate copy of the Galen Policy is attached hereto Exhibit E.

### *The Hedricks Claim*

28. On July 25, 2013, Reginald Robinson, as Special Administrator of the Estate of Katheryn Robinson, and Lee A. Hedricks, as Special Administrator of the Estate of Walter Bruce filed civil action no. 2013-L-008445 in the Court of Cook County. The Defendants included Edward J. Novak, Roy M. Payawal, Venkateswara R. Kuchipudi, Percy Conrad May, Subir Maitra, and Shanin Moshiri. On September 5, 2013, the matter was removed to the United States District Court for the Northern District of Illinois, no. 1:13-cv-06353.

29. On September 24, 2013, the Plaintiffs filed a First Amended Complaint, and added Dr. Guerriero as a defendant. A true and accurate copy of the First Amended Complaint is attached hereto as Exhibit F.

30. On January 3, 2014, the Court dismissed the matter, without prejudice.

31. On April 23, 2014, Hedricks, as Independent Administrator of the Estate of Walter L. Bruce, deceased, filed civil action no. 14L004522 in in the Circuit Court of Cook County, Illinois against Edward J. Novak, Roy M. Payawal, Anthony J. Puorro, Noemi Velgara, Venkata Buddharaju, M.D., and Vittorio Guerriero, M.D. ("Hedricks Lawsuit"). On January 15, 2015, Hedricks filed a Second Amended Complaint. A true and accurate copy of the Second Amended Complaint is attached hereto as Exhibit G.

32. In the operative complaint, Hedricks alleges that Guerriero was the subject of the FBI investigation and was Physician E identified in the federal indictment.

33. Hedricks further alleges that a Sacred Heart employee reviewed certain tracheotomy patient files in connection the CMS and State of Illinois investigation and found that none contained documentation explaining any efforts to wean the patients from the ventilators or the physician's decision to intubate the patients. Guerriero was the surgeon for each of the

reviewed files, and allegedly performed tracheotomies in the absence of an order for a surgical referral from the pulmonologist. Hedricks alleges that the mortality rate for Medicare patients who received tracheotomies from Guerriero far exceeded the morality rate for patients who received tracheotomies in Illinois.

34. Hedricks alleges that on or about March 23, 2012, Walter Bruce was admitted to Sacred Heart Hospital suffering from cellulitis of the left abdominal wall and peritoneal cavity fluid. Dr. Guerriero participated in his care, treatment and surgical procedures.

35. Hedricks alleges that on or about April 23, 2012, Dr. Guerriero performed an unnecessary tracheotomy on Walter Bruce and placed a Groshong catheter in him. Several hours later, Bruce was found deceased in his hospital room.

36. In Count I, Conspiracy, Hedricks alleges that the defendants agreed and conspired to and did solicit physicians to perform medically unnecessary tracheotomies on Sacred Heart patients because they provided substantial insurance reimbursement income for the hospital. Hedricks alleges that Guerriero performed a tracheotomy on Walter Bruce which he knew was not medically necessary to preserve the health and well-being of Bruce, but was performed in furtherance of the Defendants' scheme to defraud Medicare and Medicaid.

37. In Count II, Fraud, Hedricks alleges that Guerriero and the other defendants agreed and conspired to provide medically unnecessary and avoidable tracheotomies to Medicare/Medicaid inpatients at Sacred Heart Hospital, including Walter Bruce, in furtherance of a scheme to defraud Medicare and Medicaid. Hedricks further alleges that Guerriero and the other defendants agreed and conspired to deceitfully obtain consent from the Medicare and Medicaid inpatients to provide unnecessary medical treatment, in furtherance of their scheme to defraud Medicare and Medicaid.

38. Hedricks alleges that Guerriero obtained consent for the tracheotomy from Hedricks based upon the false and intentionally deceitful statement that the tracheotomy was medically necessary to preserve the health and well-being of Bruce. As a result, Bruce underwent a medically unnecessary tracheotomy, which resulted in significant pain and suffering and his death on April 23, 2012.

39. In Count III, Medical Battery, Hedricks alleges that because of Guerriero's false and deceitful representation that the tracheotomy was a medically necessary procedure, Bruce underwent a medically unnecessary tracheotomy resulting in significant pain and suffering and his death.

40. In Count IV, Wrongful Death, Hedricks alleges that Guerriero committed one or more of the following careless and negligent acts and/or omissions, which resulted in Bruce's wrongful death:

   a. performed a tracheotomy that was not clinically indicated;
   b. performed a tracheostomy that was not medically necessary;
   c. failed to perform paracentesis to treat the Plaintiff's Decedent's ascites;
   d. carelessly, negligently and improperly placed a shunt in Plaintiff's decedent;
   e. failed to obtain informed consent for the tracheotomy.
   f. failed to obtain informed consent for the shunt placement.

41. In Count V, Medical Negligence- Survival, Hedricks seeks recovery pursuant to 755 ILCS 5/27-6, et seq., the Illinois Survival Act.

42. On December 18, 2014, Hedricks obtained an order of default against Dr. Guerriero

43. On March 31, 2015, Guerriero first reported the Hedricks matter to Galen.

44. Dr. Guerriero has demanded that Galen pay the past and future costs to defend and indemnify him against the Hedricks Lawsuit. Galen contends that it is entitled to rescind the Galen Policy, and that it has no obligation to defend or indemnify Dr. Guerriero against the Hedricks Lawsuit. Therefore, an actual and immediate controversy exists between the parties.

## COUNT I

## DECLARATION OF RESCISSION

45. Galen hereby incorporates the allegations contained in paragraphs 1 through 44 of this Complaint as though set forth fully herein as this paragraph 45.

46. In December of 2013, Dr. Guerriero submitted an application for insurance to Galen. In determining whether and under what terms it might accept the risk, Galen relied upon the representations and information provided to it by Dr. Guerriero.

47. Despite the fact that Dr Guerriero was being investigated by the federal and state governments for Medicaid and Medicare fraud and performing unnecessary surgical procedures which had an increased morality rate to his patients, Dr. Guerriero represented to Galen that he had never been investigated, charged with, or convicted of a violation of federal, state or local law other than routine traffic offenses.

48. The investigation, allegations of unnecessary surgeries and the deaths of his patients after surgery also constituted circumstances, occurrences, or incidents that were likely to give rise to claims or suits against Dr. Guerriero, which were not disclosed to Galen.

49. Additionally, although Dr. Guerriero's surgical privileges had previously been suspended and then revoked at Lincoln Park Hospital, Dr. Guerriero represented to Galen that he no hospital had ever restricted, reduced, refused, or suspended his privileges.

50. Section V. CONDITIONS contains the following provision:

    E. Declarations and Applications

>By acceptance of this policy, each Named Insured agrees that the statements in the Declaration Page and the applications submitted in connection with policy are its, his or her agreements and representations and that this p9olicy is issued in reliance upon the truth of such representations, that they are deemed material parts of this policy and that this policy embodies all agreements existing between each Named Insured and the Company or any of its agents relating to this insurance.

51. Dr. Guerriero's misrepresentations and/or omissions were material to the risk assumed by Galen, thereby entitling Galen to rescind the policy of insurance it issued to Dr. Guerriero.

52. Because the policy issued to Dr. Guerriero is void, Galen also has no obligation to defend or indemnify Dr. Guerriero against the Hedricks Lawsuit.

53. Galen agrees to tender the premium to Dr. Guerriero upon judgment of rescission.

WHEREFORE, Plaintiff, Galen Insurance Company prays that this Honorable Court declare that Galen is entitled to rescind policy no. IL-1537; declare that Galen therefore has no obligation to defend or indemnify Vittorio Guerriero M.D. against the Hedricks Lawsuit, and grant Galen any other and relief that this Court deems just and proper, including fees and costs.

## COUNT II

## INSURING AGREEMENT

54. Galen hereby incorporates the allegations contained in paragraphs 1 through 53 of this Complaint as though set forth fully herein as this paragraph 54.

55. The Galen Policy contains the following notice:

NOTICE

PLEASE REVIEW THIS POLICY CAREFULLY

THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILTY FOR THOSE CLAIMS THAT:

    A.    ARISE FROM INCIDENTS OR EVENTS THAT HAPPEN WHILE COVERAGE UNDER THIS POLICY IS IN FORCE AND THAT INVOLVE YOUR PROFESSIONAL SERVICES; AND

    B.    THAT ARE FIRST MADE AGAINST YOU AND ARE REPORTED TO THE COMPANY DURING THE POLICY PERIOD, INCLUDING ANY EXTENDED REPORTING PERIOD, OR DURING ANY OPTIONAL EXTENDED REPORTING PERIOD PROVIDED THROUGH AN ENDORSEMENT.

55.    The Insuring Agreement of the Galen Policy provides, in pertinent part, as follows:

    I.    COVERAGE

The Company will pay on Your behalf all sums which You are legally obligated as Damages for Claims. The Company's obligations under this policy only apply to Claims first made against You and reported to the Company during the Policy Period or, if applicable, the Extended Reporting Period or Optional Extended Reporting Period. This insurance only applies to Medical Incidents arising out of Professional Services rendered (or not rendered) by You, or by any person for whose acts You are legally responsible, or Peer Review services rendered by You. The Company's obligations under this policy are subject to the Per-Claim Limit of Liability, Annual Aggregate Limit of Liability, exclusions, limitations, conditions, and all other terms of this policy, . . .

56.    Even if the Galen Policy were not void and unenforceable based upon Dr. Guerriero's material misrepresentations in the Galen Policy Applications, the Hedricks Lawsuit is otherwise not covered because the Hedricks claim was not first made and reported during the Galen Policy Period, as required to invoke coverage. Galen therefore has no obligation to defend or indemnify Guerriero against the Hedricks Lawsuit.

WHEREFORE, Plaintiff, Galen Insurance Company prays that this Honorable Court declare, alternatively, that Galen has no obligation to defend or indemnify Vittorio Guerriero M.D. against the Hedricks Lawsuit, and grant Galen any other and relief that this Court deems just and proper, including fees and costs.

## COUNT III

## PRIOR NOTICE

57. Galen hereby incorporates the allegations contained in paragraphs 1 through 56 of this Complaint as though set forth fully herein as this paragraph 57.

58. The Insuring Agreement of the Galen Policy provides, in pertinent part, as follows:

> I. COVERAGE
>
> The Company will pay on Your behalf all sums which You are legally obligated as Damages for Claims. The Company's obligations under this policy only apply to Claims first made against You and reported to the Company during the Policy Period or, if applicable, the Extended Reporting Period or Optional Extended Reporting Period. This insurance only applies to Medical Incidents arising out of Professional Services rendered (or not rendered) by You, or by any person for whose acts You are legally responsible, or Peer Review services rendered by You. The Company's obligations under this policy are subject to the Per-Claim Limit of Liability, Annual Aggregate Limit of Liability, exclusions, limitations, conditions, and all other terms of this policy, and provided always that such Medical Incident happens:
>
> A. on or after the Effective Date or Endorsement Effective Date but during the Policy Period; or
>
> B. at any time prior to the Effective Date or Endorsement Effective Date, if:
>
> 1. such Medical Incident happens on or subsequent to the applicable Retroactive Date; and
>
> 2. You did not know or could not have reasonably foreseen that such Medical Incident might be expected to be the basis of a Claim on the Effective Date of this policy or the first claims made policy issued by the Company to which this policy is a renewal, whichever is earlier; . . .

\*\*\*

59. "Medical Incident" is defined in the Galen Policy as:

> any act, error or omission in the rendering of or failure to render Professional Services by a Named Insured, an Insured Employee, or any person for whom a Named Insured is legally responsible. For purposes of determining the date of occurrence of a Medical Incident, all Bodily Injury or Damages arising out of any series of treatments , or series of exposures or interrelated events subject to

eth same general conditions, will be deemed as occurring at the time of the occurrence of the first of such series of treatments, events or exposures to the same general conditions.

60. Even if the Galen Policy were not void and unenforceable based upon Dr. Guerriero's material misrepresentations in the Galen Policy Application, the Hedricks Lawsuit is otherwise not covered because prior to inception of the Galen Policy, Guerriero knew or could have reasonably foreseen that his acts, errors or omissions might be expected to be the basis of a claim or suit.

61. Prior to the inception of the Galen Policy, Guerriero was publicly accused by federal and state authorities of performing unnecessary tracheostomy procedures on elderly and disabled patients, including Walter Bruce. Dr. Guerriero was also publicly accused of having unreasonably high mortality rates.

62. Prior to inception of the Galen Policy, Dr. Guerriero performed a tracheostomy on Walter Bruce. Bruce died shortly after the procedure. Bruce was one of the subjects of the FBI investigation.

63. These constitute acts, errors or omissions that Dr. Guerriero knew or could have reasonably foreseen might be expected to be the basis of a Claim against him. Accordingly, even assuming the Galen Policy were not void and unenforceable by reason of Dr. Guerriero's material misrepresentations in the Galen Policy Application, the Hedricks Lawsuit is outside the scope of coverage. Galen therefore has no obligation to defend or indemnify Dr. Guerriero against the Hedricks Lawsuit.

WHEREFORE, Plaintiff, Galen Insurance Company prays that this Honorable Court declare, alternatively, that Galen has no obligation to defend or indemnify Vittorio Guerriero M.D. against the Hedricks Lawsuit, and grant Galen any other and relief that this Court deems just and proper, including fees and costs.

## COUNT IV

## EXCLUSION L

64. Galen hereby incorporates the allegations contained in paragraphs 1 through 63 of this Complaint as though set forth fully herein as this paragraph 64.

65. The Galen Policy contains Exclusion L, which provides that the insurance does not apply to any of the following, and the Company will not pay any Damages or Claim Expenses, or provide a defense, for any of the following:

> L. any Claim arising out of any dishonest, fraudulent, criminal or malicious act or omission, or misrepresentation, by, at the direction of, or with the knowledge or consent of, any Insured; however, Claims Expenses which would have been available under this policy will be reimbursed if it is determined by a court that he Insured did not commit a fraudulent or dishonest act or omission.

66. Even if the Galen Policy were not void and unenforceable based upon Dr. Guerriero's material misrepresentations in the Galen Policy Application, the Hedricks Lawsuit is otherwise not covered because the Hedricks claim arises out of alleged dishonest, fraudulent, criminal and/or malicious acts or omissions by Dr. Guerriero.

67. In the complaint, Hedricks alleges that Dr. Guerriero participated in a conspiracy to perform unnecessary tracheostomy procedures on elderly and disabled patients, including Walter Bruce, for the purpose of generating income for Sacred Heart Hospital and its physicians.

68. Hedricks asserts causes of action against Dr. Guerriero for conspiracy, fraud, and medical battery.

69. Exclusion L therefore applies to preclude coverage, and Galen has no obligation to defend or indemnify Guerriero against the Hedricks Lawsuit.

WHEREFORE, Plaintiff, Galen Insurance Company prays that this Honorable Court declare, alternatively, that Galen has no obligation to defend or indemnify Vittorio Guerriero

M.D. against the Hedricks Lawsuit, and grant Galen any other and relief that this Court deems just and proper, including fees and costs.

## COUNT IV

## EXCLUSION O

70. Galen hereby incorporates the allegations contained in paragraphs 1 through 69 of this Complaint as though set forth fully herein as this paragraph 70.

71. The Galen Policy contains Exclusion O, which provides that the insurance does not apply to any of the following, and the Company will not pay any Damages or Claim Expenses, or provide a defense, for any of the following:

> O. any Claim arising out of Bodily Injury which was expected or intended by an Insured regardless of whether or not such act or omission was intended to cause the specific Bodily Injury sustained.

72. Even if the Galen Policy were not void and unenforceable based upon Dr. Guerriero's material misrepresentations in the Galen Policy Application, the Hedricks Lawsuit is otherwise not covered because the Hedricks claim arises out of Bodily Injury which was expected or intended by Dr. Guerriero.

73. In the complaint, Hedricks alleges that Dr. Guerriero participated in a conspiracy to perform unnecessary tracheostomy procedures on elderly and disabled patients, including Walter Bruce, for the purpose of generating income for Sacred Heart Hospital and its physicians, which resulted in bodily injury to his patients.

74. Exclusion L therefore applies to preclude coverage, and Galen has no obligation to defend or indemnify Guerriero against the Hedricks Lawsuit.

WHEREFORE, Plaintiff, Galen Insurance Company prays that this Honorable Court declare, alternatively, that Galen has no obligation to defend or indemnify Vittorio Guerriero

M.D. against the Hedricks Lawsuit, and grant Galen any other and relief that this Court deems just and proper, including fees and costs.

              Respectfully submitted,

              By: ___s/ Michelle M. Bracke_____
                One of the Attorneys for Plaintiff

Michelle M. Bracke, Esq. (ARDC #: 6224533)
Kelly M. Ognibene, Esq. (ARDC #: 6297327)
LEWIS BRISBOIS BISGAARD & SMITH, L.L.P.
550 W. Adams Street, 3rd Floor
Chicago, Illinois 60661
Ph. 312.345.1718
Fax: 312.345-1778
Michelle.bracke@lewisbrisbois.com
Kelly.Ognibene@lewisbrisbois.com