Exhibit F

TAR/kam/213-149



#02485

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT – LAW DIVISION

LEE A. HEDRICKS, Independent )
Administrator of the ESTATE OF WALTER )
L. BRUCE, deceased, )
            Plaintiff, )
)
    v. )    No. 14 L 004522
)
EDWARD J. NOVAK, ROY M. PAYAWAL, )
ANTHONY J. PUORRO, NOEMI VELGARA, )
VENKATA BUDDHARAJU, M.D., )
and VITTORIO GUERRIERO, M.D., )
)
            Defendants. )

## FIRST AMENDED COMPLAINT AT LAW

    NOW COMES the Plaintiff, LEE A. HEDRICKS, Independent Administrator of the ESTATE OF WALTER L. BRUCE, deceased, by and through his attorneys, CURCIO LAW OFFICES, and for his complaint against the defendants, EDWARD J. NOVAK, ROY M. PAYAWAL, ANTHONY J. PUORRO, NOEMI VELGARA, VENKATA BUDDHARAJU, M.D., and VITTORIO GUERRIERO M.D., states follows:

## ALLEGATIONS COMMON TO ALL COUNTS

    1.    At all times relevant herein, Plaintiff's Decedent, WALTER L. BRUCE was a resident of the County of Cook and State of Illinois.

    2.    At all times relevant herein, West Side Community Hospital, Inc., an Illinois Corporation, was a licensed acute-care hospital operating as SACRED HEART HOSPITAL at 3240 West Franklin Boulevard, Chicago, IL, in the County of Cook and State of Illinois.

1

3.    At all times relevant herein, Sacred Heart Hospital provided health care services to patients insured by Medicare, Medicaid and private insurance companies.

4.    At all times relevant herein, EDWARD NOVAK was Sacred Heart's owner and Chief Executive Officer, a position in which NOVAK had ultimate authority over the hospital's operations and personnel.

5.    At all times relevant herein, ROY M. PAYAWAL was employed as Sacred Heart's Executive Vice-President and Chief Financial Officer, a position in which PAYAWAL was responsible for overseeing Sacred Heart's books and records, including its accounts payable and payroll.

6.    At all times relevant herein, ANTHONY J. PUORRO, was employed as Sacred Heart's Chief Operating Officer, a position in which PUORRO was responsible for overseeing the hospital's clinical departments and general operations, and making decisions regarding physician recruitment.

7.    At all times relevant herein, NOEMI VELGARA, was employed as Sacred Heart's Vice-President of Geriatric Services, a position in which VELGARA was responsible for overseeing the Golden L.I.G.H.T. medical clinics, managing Sacred Heart's marketing and transportation services staff and overseeing employees responsible for patient recruitment at Sacred Heart and the Golden L.I.G.H.T. clinics.

8.    At all times relevant herein EDWARD J. NOVAK, ROY M. PAYAWAL, ANTHONY PUORRO, and   NOEMI VELGARA were the subject of an F.B.I investigation and subsequent Federal Indictment that alleges they engaged in a scheme to defraud Medicare and Medicaid by submitting and causing

2

the submission of claims and the presentment of hospital cost reimbursement reports seeking payment for the sedation, intubation, and subsequent performance of tracheotomy procedures on patients absent a medical necessity to perform these medical procedures on the subject patients.

9.   At all times relevant herein, VENKATA BUDDHARAJU, M.D. was a physician licensed to practice medicine in the State of Illinois.

10.   At all times relevant herein, VENKATA BUDDHARAJU, M.D., was a pulmonologist under contract at Sacred Heart as an "Intensivist," providing medical services to respiratory patients admitted to the hospital.

11.   At all times relevant herein, Defendant, VENKATA BUDDHARAJU, M.D., served as chair of the Critical Care Committee of Sacred Heart's medical staff.

12.   At all times relevant herein, VENKATA BUDDHARAJU, M.D. was enrolled as a provider in the Medicare and Medicaid programs.

13.   At all times relevant herein, VENKATA BUDDHARAJU, M.D. was identified in F.B.I. filings as "Physician D."

14.   At all times relevant herein, VITTORIO GUERRIERO M.D. was a physician licensed to practice medicine in the State of Illinois with clinical privileges at Sacred Heart Hospital

15.   At all times relevant herein, VITTORIO GUERRIERO, M.D. was enrolled as a provider in the Medicare and Medicaid programs.

16.   At all times relevant herein, VITTORIO GUERRIERO, M.D. was identified in F.B.I. filings as "Physician E."

3

17. On or about March 23, 2012, Plaintiff's decedent, WALTER L. BRUCE, was admitted to the general telemetry floor of Sacred Heart suffering from cellulitis of the left abdominal wall and peritoneal cavity fluid.

18. At all times relevant herein, VITTORIO GUERRIERO M.D., and VENKATA BUDDHARAJU, M.D. participated in the care, treatment and surgical procedures performed on Plaintiff's Decedent, WALTER L. BRUCE, during his hospitalization at SACRED HEART HOSPITAL.

19. On or about April 16, 2012, Plaintiff's Decedent, WALTER L. BRUCE, came under the care and treatment of VENKATA, BUDDHARAJU, M.D.

20. On or about April 23, 2012, Defendant, VITTORIO GUERRIORO, M.D., performed a tracheotomy and placed a Groshong catheter in Plaintiff's Decedent.

21. On April 23, 2012, several hours after the tracheotomy procedure, Plaintiff's Decedent was found dead in his hospital room.

## COUNT I
### Conspiracy

**(EDWARD J. NOVAK, ROY M. PAYAWAL, ANTHONY PUORRO, NOEMI VELGARA, VENKATA BUDDHARAJU, M.D. and VITTORIO GUERRIERO, M.D.)**

1. – 21. Plaintiff re-alleges and incorporates Paragraphs 1 through 21 of his Allegations Common to All Counts as paragraphs 1 through 21 of Count I.

22. At all times relevant, Medicare was a federal health care program that provided free and below-cost health care benefits to eligible beneficiaries, including Medicare Part A benefits of medically necessary in-

4

patient hospital care and testing, and Medicare Part B benefits for medically necessary physician services and out-patient services.

23.    At all times relevant, Medicaid was a federal health care program that authorized federal grants to Illinois for medical assistance, including medically necessary in-patient and out-patient services to certain eligible low-income and disabled beneficiaries.

24.    At all times relevant, the Federal Healthcare Program Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), prohibited the offer and payment as well as the solicitation and receipt of remunerations in return for the referral of patients for the furnishing or arranging of any item or service for which payment may be made in whole or in part under a federal health care program.

25.    At all times relevant, EDWARD J. NOVAK, ROY M. PAYAWAL, ANTHONY PUORRO, NOEMI VELGARA voluntarily agreed and conspired to and did cause Sacred heart to pay kickbacks to physicians for the referral of patients to Sacred Heart in violation of 42 U.S.C. § 1320-7b(b).

26.    At all times relevant, EDWARD J. NOVAK, ROY M. PAYAWAL, ANTHONY PUORRO and NOEMI VELGARA voluntarily agreed and conspired to and did cause Sacred Heart to offer to pay bribes to Sacred Heart transportation staff employees for the recruitment and referral of patients to Sacred Heart in violation of 42 U.S.C. § 1320-7b(b).

27.    At all times relevant, EDWARD J. NOVAK, ROY M. PAYAWAL, ANTHONY PUORRO and NOEMI VELGARA voluntarily agreed and conspired to and did cause Sacred Heart to pay remunerations to individuals employed by

Sacred Heart as "marketers" to recruit patients for Sacred Heart in violation of 42 U.S.C. § 1320-7b(b).

28.   At all times relevant, EDWARD J. NOVAK ROY M. PAYAWAL, ANTHONY J. PUORRO and NOEMI VELGARA, voluntarily agreed and conspired to and did solicit physicians for the referral of potential tracheotomy cases to Sacred Heart in violation of 42 U.S.C. § 1320-7b(b).

29.   At all times relevant, EDWARD J. NOVAK ROY M. PAYAWAL, ANTHONY J. PUORRO and NOEMI VELGARA, voluntarily agreed and conspired to and did solicit physicians to perform medically unnecessary tracheotomies on Sacred Heart patients because they provided substantial insurance reimbursement income for the hospital.

30.   At all times relevant, EDWARD J. NOVAK, ROY M. PAYAWAL, ANTHONY PUORRO and NOEMI VELGARA voluntarily agreed and conspired to and did misrepresent, conceal and cause to be misrepresented the purpose of and acts done in furtherance of the conspiracy.

31.   At all times relevant, EDWARD J. NOVAK, ROY M. PAYAWAL, ANTHONY PUORRO and NOEMI VELGARA voluntarily agreed and conspired to and did conceal the kickbacks through various means including masking the payments as costs of legitimate services including consulting and employment compensation.

32.   At all times relevant, EDWARD J. NOVAK, while in the presence of Sacred Heart employees, stated that tracheotomies are Sacred Heart's "biggest money maker" and that the hospital could make "$160,000 for a tracheotomy if the patient stays 27 days."

6

33.    At all times relevant, EDWARD J. NOVAK instructed members of Sacred Heart's ICU staff to "stretch" the length of a tracheotomy patient's stay to 28 days so as to maximize Medicare and Medicaid reimbursements.

34.    At all times relevant, EDWARD J. NOVAK routinely monitored the number of intubated patients at SACRED HEART by inquiring of the ICU staff.

35.    At all times relevant, EDWARD J. NOVAK solicited VENKATA BUDDHARAJU, M.D., to refer additional tracheotomy cases to Sacred Heart during a monthly Medical Executive Committee meeting in the presence of other Committee members.

36.    At all times relevant, EDWARD J. NOVAK, ROY M. PAYAWAL, ANTHONY J. PUORRO and NOEMI VELGARA, caused Sacred Heart to pay VENKATA BUDDHARAJU, M.D. remuneration based on an hourly basis for his medical services at the hospital which in fact was a kickback for the referral of tracheotomy patients in violation of 42 U.S.C. § 1320-7b(b).

37.    At all times relevant, VENKATA BUDDHARAJU, M.D. referred a high number of his patients for intubations, the necessity of which was regularly called into question by the hospital staff.

38.    At all times relevant, VENKATA BUDDHARAJU, M.D. unnecessarily intubated elderly and disabled patients and placed them on a ventilator rather than managing their simple respirator difficulties with less intrusive therapy.

39.    At all times relevant, VENKATA BUDDHARAJU, M.D. purposely and unnecessarily prolonged the hospitalization of tracheotomy patients by directing the heavy sedation of those patients.

7

40. At all times relevant, VENKATA BUDDHARAJU, M.D., routinely over-sedated his patients so they were not able to breathe on their own, became ventilator-dependent or were on the ventilator so long that their tracheas were damaged necessitating a tracheotomy procedure.

41. At all times relevant, VENKATA BUDDHARAJU, M.D. regularly and deliberately extended and unnecessarily prolonged the hospitalization of tracheotomy patients thereby generating more money in insurance reimbursements from Medicare and Medicaid for both himself and Sacred Heart.

42. At all times relevant, VITTORIO GUERRIERO, M.D., was the general surgeon at SACRED HEART that performed the unnecessary tracheotomies on many of VENKATA BUDDHARAJU, M.D.'s patients.

43. At all times relevant, VITTORIO GUERRIERO, M.D., knew or should have known that the surgery he was consulted to perform was medically unnecessary or avoidable.

44. Medicare claims data for the period February 2010 to January 2013 reveal the mortality rate for Medicare patients who received tracheotomies from VITTORIO GUERRIERO, M.D., (17.85%) far exceeded the mortality rate for patients who received tracheotomies within Illinois (5.64%).

45. Of the 4,254 Medicare patients who underwent tracheotomies performed by other surgeons, 240 died within 14 days of surgery, resulting in a mortality rate of approximately 5.64%. For the 28 Medicare patients upon whom VITTORIO GUERRIERO, MD., performed tracheotomies at Sacred Heart,

8

5 died within 14 days of the surgery, resulting in a mortality rate of approximately 17.85%.

46.   A Sacred Heart employee reviewed approximately eight tracheotomy patient files in connection with the CMS and State of Illinois investigation and found that none contained documentation explaining any efforts to wean the patients from the ventilators or the physician's decision to intubate the patients

47.   VENKATA BUDDHARAJU, M.D. was the pulmonologist for each of the eight patients whose files were reviewed and each file contained only a written notation, "plan to trache," but did not contain an order for a surgical referral for a tracheotomy.

48.   VITTORIO GUERRIERO, M.D. was the surgeon for each of the eight patients whose files were reviewed who performed the tracheotomy in the absence of an order for a surgical referral from the pulmonologist.

49.   On March 7, 2013, ANTHONY J. PUORRO, advised EDWARD J. NOVAK about the chart deficiencies discovered during the CMS and State of Illinois investigation.

50.   On April 23, 2012, VITTORIO GUERRIERO, M.D. performed a tracheotomy on Plaintiff's Decedent, WALTER L. BRUCE which he knew was not medically necessary to preserve the health and well-being of Plaintiff's Decedent but was performed in furtherance of the Defendants' scheme to defraud Medicare and Medicaid.

51.   As a direct and proximate result of the unnecessary tracheotomy performed in furtherance of EDWARD J. NOVAK, ROY M. PAYAWAL, ANTHONY

9

PUORRO, NOEMI VELGARA, VENKATA BUDDHARAJU, M.D., and VITTORIO GUERRIERO, M.D.'S, scheme to defraud Medicare and Medicaid, Plaintiff's Decedent, WALTER L. BRUCE, underwent a medically unnecessary tracheotomy which resulted in significant pain and suffering and his death on April 23, 2012.

WHEREFORE, Plaintiff, LEE HEDRICK, Independent Administrator of the Estate of WALTER L. BRUCE, deceased, by and through his attorneys, CURCIO LAW OFFICES, prays this honorable court enter judgment against the Defendants, EDWARD J. NOVAK, ROY M. PAYAWAL, ANTHONY PUORRO, NOEMI VELGARA, VENKATA BUDDHARAJU, M.D., and VITTORIO GUERRIERO M.D., for a sum in excess of FIFTY THOUSAND ($50,000) DOLLARS.

## COUNT II
### Fraud

**(EDWARD J. NOVAK, ROY M. PAYAWAL, ANTHONY PUORRO, NOEMI VELGARA, VENKATA BUDDHARAJU, M.D. and VITTORIO GUERRIERO, M.D.)**

1. – 51.    Plaintiff re-alleges and incorporates Paragraphs 1 through 51 of Count I as paragraphs 1 through 51 of Count II as though fully set forth herein.

52.    At all times relevant herein, EDWARD J. NOVAK, ROY M. PAYAWAL, ANTHONY PUORRO, NOEMI VELGARA, VENKATA BUDDHARAJU, M.D., and VITTORIO GUERRIERO, M.D., agreed and conspired to provide medically unnecessary and avoidable tracheostomies to Medicare/Medicaid inpatients at Sacred Heart including Plaintiff's Decedent, WALTER L. BRUCE, in furtherance of their scheme to defraud Medicare and Medicaid.

10

53. EDWARD J. NOVAK, ROY M. PAYAWAL, ANTHONY PUORRO, NOEMI VELGARA, VENKATA BUDDHARAJU, M.D., and VITTORIO GUERRIERO, M.D., agreed and conspired to deceitfully obtain consent from the Medicare and Medicaid inpatients at SACRED HEART HOSPITAL to provide unnecessary medical treatment including the medically unnecessary tracheostomies, in furtherance of their scheme to defraud Medicare and Medicaid.

54. On April 23, 2012, VITTORIO GUERRIERO M.D. advised Lee A. Hendricks, Plaintiff's Decedent's power of attorney, that a tracheotomy was medically necessary to preserve the health and well-being of Plaintiff's Decedent.

55. On April 23, 2012, VITTORIO GUERRIERO M.D. knew that Plaintiff's Decedent's medical condition did not require a tracheotomy and that his statement to the contrary was false and intended to deceive Lee A. Hendricks.

56. On April 23, 2012, Lee A. Hendricks, Plaintiff's power of attorney, consented to Plaintiff's Decedent, WALTER L. BRUCE, undergoing a tracheotomy procedure in reliance on the veracity of VITTORIO GUERRIERO M.D.'S representation that a tracheotomy was a medically necessary procedure to preserve the health and well-being of Plaintiff's Decedent.

57. On April 23, 2012, VITTORIO GUERRIERO, M.D. performed a tracheotomy on Plaintiff's Decedent, WALTER L. BRUCE which he knew was not medically necessary to preserve the health and well-being of Plaintiff's Decedent but was performed in furtherance of the Defendants' scheme to defraud Medicare and Medicaid.

11

58.     As a direct and proximate result of Lee A. Hedrick's reliance on VITTORIO GUERRIERO M.D.'S representation that a tracheotomy was a medically necessary procedure, Plaintiff's Decedent, WALTER L. BRUCE, underwent a medically unnecessary tracheotomy on April 23, 2012 which resulted in significant pain and suffering and his death on April 23, 2012.

WHEREFORE, Plaintiff, LEE HEDRICK, Independent Administrator of the Estate of WALTER L. BRUCE, deceased, by and through his attorneys, CURCIO LAW OFFICES, prays this honorable court enter judgment against the Defendants, EDWARD J. NOVAK, ROY M. PAYAWAL, ANTHONY PUORRO, NOEMI VELGARA, VENKATA BUDDHARAJU, M.D., and VITTORIO GUERRIERO M.D., for a sum in excess of FIFTY THOUSAND ($50,000) DOLLARS.

## COUNT III
## Medical Battery

**(EDWARD J. NOVAK, ROY M. PAYAWAL, ANTHONY PUORRO, NOEMI VELGARA, VENKATA BUDDHARAJU, M.D. and VITTORIO GUERRIERO, M.D.)**

1. – 58.     Plaintiff re-alleges and incorporates Paragraphs 1 through 58 of Count II as paragraphs 1 through 58 of Count III as though fully set forth herein.

59.     Lee A. Hedrick's consent to the tracheotomy procedure was predicated on the truthfulness of VITTORIO GUERRIERO M.D.'s representation that the procedure was medically necessary to preserve the health and well-being of Plaintiff's Decedent, WALTER L. BRUCE.

60.    VITTORIO GUERRIERO M.D. knew his representation to Lee A. Hedrick to be false and made in furtherance of the Defendants' scheme to defraud Medicare and Medicaid.

61.    VITTORIO GUERRIERO M.D.'s intentional deceit in obtaining consent to perform the tracheotomy on Plaintiff's Decedent abrogated Lee A. Hedrick's consent to the tracheotomy and resulted in a medical battery against Plaintiff's Decedent, WALTER L. BRUCE.

62.    As a direct and proximate result of VITTORIO GUERRIERO, M.D.'s intentional misrepresentation that a tracheotomy was a medically necessary procedure, Plaintiff's Decedent, WALTER L. BRUCE, underwent a medically unnecessary tracheotomy on April 23, 2012 which resulted in significant pain and suffering and resulted in his death on April 23, 2012.

WHEREFORE, Plaintiff, LEE HEDRICK, Independent Administrator of the Estate of WALTER L. BRUCE, deceased, by and through his attorneys, CURCIO LAW OFFICES, prays this honorable court enter judgment against the Defendants, EDWARD J. NOVAK, ROY M. PAYAWAL, ANTHONY PUORRO, NOEMI VELGARA, VENKATA BUDDHARAJU, M.D., and VITTORIO GUERRIERO M.D., for a sum in excess of FIFTY THOUSAND ($50,000) DOLLARS.

### COUNT IV
### Medical Negligence – Wrongful Death

### (VITTORIO GUERREIRO, M.D. and VENKATA BUDDHARAJU, M.D.)

1. – 21.    Plaintiff re-alleges and incorporates Paragraphs 1 through 21 of his Allegations Common to All Counts as paragraphs 1 through 21 of Count IV.

13

22. On or about March 23, 2012, Plaintiff's Decedent, WALTER L. BRUCE, was admitted to the general telemetry floor of Sacred Heart suffering from cellulitis of the left abdominal wall and peritoneal cavity fluid.

23. On various days and dates subsequent to March 23, 2012 and thereafter VITTORIO GUERREIRO, M.D. and VENKATA BUDDHARAJU, M.D., had undertaken the care and treatment of Plaintiff's Decedent, WALTER L. BRUCE, and had agreed to care for and monitor his condition of ill being.

24. At all times relevant, VITTORIO GUERREIRO, M.D. and VENKATA BUDDHARAJU, M.D., held themselves out as specialists in various fields and were required to exercise a degree of care and caution required of specialists in the fields in which they were practicing then and there in the County of Cook and State of Illinois.

25. On the aforesaid days and dates and thereafter and in violation of the duty aforesaid, VITTORIO GUERREIRO, M.D. and VENKATA BUDDHARAJU, M.D., each of them named herein individually and in concert with each other committed one or more of the following careless and negligent acts and/or omissions:

a. Ordered a tracheotomy that was not clinically indicated;

b. Ordered a tracheotomy that was not medically necessary;

c. Performed a tracheotomy that was not clinically indicated;

d. Performed a tracheotomy that was not medically necessary;

e. Failed to perform a weaning trial on the Plaintiff's Decedent from mechanical ventilation prior to tracheotomy;

14

       f.      Failed to perform paracentesis to treat the Plaintiff's Decedent's ascites;

       g.     Carelessly, negligently and improperly placed a shunt in Plaintiff's Decedent;

       h.     Failed to obtain informed consent for the tracheotomy;

       i.      Failed to obtain informed consent for the shunt placement.

26.     That as a direct and proximate result of one or more of the foregoing wrongful acts and/or omissions of the Defendants, VITTORIO GUERREIRO, M.D. and VENKATA BUDDHARAJU, M.D., Plaintiff's Decedent, WALTER L. BRUCE, was then and there injured; was caused to endure pain and suffered; was caused to spend substantial sums of money for medical care and treatment and resulted in his death on April 23, 2012.

27.     WALTER L. BRUCE, deceased, was survived by: Lee Hedrick, his brother; William Hedrick, his brother; Ezra Hedrick, his brother; Viola Hamp, his sister and Hattie Watson, his sister, who have suffered personal and pecuniary loss as the result of the death of WALTER L. BRUCE and have suffered from the loss of the love, affection, society and companionship that they enjoyed prior to his death.

28.     LEE HEDRICK, as Independent Administrator of the ESTATE OF WALTER L. BRUCE brings this cause of action pursuant to 740 ILCS 180/1 *et. seq.*, commonly known as the Illinois Wrongful Death Act.

WHEREFORE, Plaintiff, LEE HEDRICK, Independent Administrator of the Estate of WALTER L. BRUCE, deceased, by and through his attorneys, CURCIO LAW OFFICES, prays this honorable court enter judgment against the

15

Defendants, VITTORIO GUERRIERO M.D. and VENKATA BUDDHARAJU, M.D. for

a sum in excess of FIFTY THOUSAND ($50,000) DOLLARS.

### COUNT V
**Medical Negligence – Survival**
**(VITTORIO GUERRIERO, M.D. and VENKATA BUDDHARAJU, M.D.)**

1. – 26.    Plaintiff re-alleges and incorporates Paragraphs 1 through

26 of his Allegations Common to All Counts as paragraphs 1 through 26 of

Count IV.

27.    LEE HEDRICK, as Independent Administrator of the ESTATE OF

WALTER L. BRUCE brings this cause of action pursuant to 755 ILCS 5/27-6, *et.*

*seq.,* commonly known as the Illinois Survival Act.

WHEREFORE, Plaintiff, LEE HEDRICK, Independent Administrator of the

Estate of WALTER L. BRUCE, deceased, by and through his attorneys, CURCIO

LAW OFFICES, prays this honorable court enter judgment against the

Defendants, VITTORIO GUERRIERO M.D. and VENKATA BUDDHARAJU, M.D. for

a sum in excess of FIFTY THOUSAND ($50,000) DOLLARS.

Respectfully submitted,

CURCIO LAW OFFICES

Joseph R. Curcio

Attorneys for Plaintiff
161 N. Clark St., Suite 2240
Chicago, IL 60601
(312) 321-1111
Attorney No.: 02485

16

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – LAW DIVISION

WALTER L. BRUCE, deceased, by his ) 
Administrator, LEE A. HEDRICKS, )
                                     )
                   Plaintiff, )
      v.                            )      No.
                                       )
EDWARD J. NOVAK, ROY M. PAYAWAL, )
ANTHONY J. PUORRO, NOEMI VELGARA, )
VENKATA BUDDHARAJU, M.D., and )
VITTORIO GUERRIERO, M.D. )
                       Defendants. )

## AFFIDAVIT PURSUANT TO
## SUPREME COURT RULE 222(b)

I, JOSEPH R. CURCIO, on oath, depose and state as follows:

1.      I am one of the attorneys assigned to the case on behalf of the Plaintiff.

2.      I have personally discussed the circumstances of this occurrence with the Plaintiff and have learned the nature and extent of the injuries.

3.      Based upon information presently available regarding the nature and extent of the Plaintiffs' injuries, I believe total damages exceed $50,000.00.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

                                     By: _____
                                           Joseph R. Curcio

SUBSCRIBED AND SWORN TO
before me this 17th day
of October , 2014

_____
Notary Public

OFFICIAL SEAL
KIMBERLY A. MILLAN
Notary Public · State of Illinois
My Commission Expires 7/09/2018

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT-LAW DIVISION

LEE A. HEDRICKS, Independent )
Administrator of the Estate of WALTER L. )
BRUCE, deceased )
                                        )
            Plaintiff,                   )
                                        )        No.  14 L 4522
        v.                              )
                                        )
EDWARD J. NOVAK, ROY M. PAYAWAL,        )
ANTHONY PUORRO, NOEMI VELGARA,          )
VENKATA BUDDHARAJU, M.D., and VITTORIO  )
GUERRIERO, M.D.                         )
                                        )
            Defendants.                  )

## AFFIDAVIT PURSUANT TO 2-622

JOSEPH R. CURCIO, on oath states:

1.    That I have consulted and reviewed the facts of the case with a physician duly licensed to practice medicine in all of its branches, who I reasonably believe is knowledgeable in the relevant issues involved in this particular action, has practiced and taught within the last six years in the same area of health care at issue, and is qualified by experience and has demonstrated competence in the subject of the case;

2.    That in a written report, a copy of which is attached hereto, this physician has stated his opinions based upon review of the medical records of this case showing that there is a reasonable and meritorious cause for filing this action.

3.    That I have concluded on the basis of the health care professional's review and consultation that there is a reasonable and meritorious cause for filing  an action against the Defendants, VENKATA BUDDHARAHJU, M.D. and VITTORIO

GUERRIERO, M.D.

4.    As to the allegations against the defendants regarding the lack of informed consent the reviewing health professional has, after reviewing the medical records and other relevant materials involved in the particular action, concluded that a reasonable health professional would have informed the patient of the consequences of the procedure.

FURTHER, your Affiant sayeth naught.

_____
Joseph R. Curcio

SUBSCRIBED and SWORN to
before me this ___17th___ day
of ~~June~~, 2014
    Oct.
_Kimberly a. Millan_____
        NOTARY PUBLIC

OFFICIAL SEAL
KIMBERLY A. MILLAN
Notary Public - State of Illinois
My Commission Expires 7/09/2018

CURCIO LAW OFFICES
Suite 2240
161 North Clark Street
Chicago, Illinois 60601
(312) 321-1111
Attorney Number: 02485

### CONSULTING PHYSICIAN'S REPORT

### DR. VENKATA BUDDHARAJU

I am a physician licensed to practice medicine in the State of Illinois and am knowledgeable in the relevant medical issues involved in this particular action. I am also a registered nurse licensed to practice nursing in the State of Illinois. I maintain a clinical practice in the areas of medicine involved in the Walter Bruce case. I am qualified by clinical experience in the subject matter of this case both as a physician and as a registered nurse.

I have consulted with counsel for the Plaintiff and reviewed the facts based upon the medical records from Sacred Heart Hospital pertaining to the medical care and treatment rendered to Walter Bruce.

A review on the facts based upon the medical records shows that Walter Bruce, a 70 year old male was admitted to Sacred Heart Hospital in March 2012 with a diagnosis of cellulitis to the left abdominal wall and ascites. His ascites was the result of chronic alcoholism with advanced cirrhosis of the liver. Mr. Bruce also suffered from chronic obstructive pulmonary disease. During the course of his hospitalization, around mid-April, Mr. Bruce required mechanical assistance for labored breathing to assist with his own spontaneous respiratory efforts. On April 17, 2012, an electroencephalogram (EEG) interpretation was noted as "severely abnormal....compatible with diffuse encephalopathy." He was improving from a respiratory standpoint. Over the course of the next few days, Mr. Bruce's respiratory status was monitored. He had been placed on a ventilator. On April 22, 2012, his



respiratory status was described as stable on the ventilator. However, around 3:30 p.m. on April 23, 2012, Mr. Bruce was in the operating room undergoing surgery known as tracheostomy. The surgeon was Dr. Vittorio Guerriero. Within hours of this surgery, Mr. Bruce was pronounced dead.

That after reviewing the pertinent medical records it is my professional opinion that there exists a reasonable and meritorious cause for filing an action against VENKATA BUDDHARAJU, M.D.

The bases for my opinion that there is a meritorious cause for filing an action against VENKATA BUDDHARAJU, M.D are as follows:

The standard of care requires that physicians refrain from performing procedures that are not medically indicated and not necessary. Further, the standard of care requires that physicians obtain informed consent from a patient, or a patient's representative, before performing any surgical procedure. This means that the physician must provide an explanation of the proposed procedure, available alternatives to the procedure, the foreseeable risks of the procedure and what medical benefit is being sought.

In this case, Dr. Buddharaju ordered a tracheostomy be performed on Mr. Bruce when there was not clinical indication or medical necessity for it. The standard of care requires that certain steps be taken prior to converting a patient on mechanically assisted respiration to tracheostomy. First, before converting a physician must perform a trial to attempt to wean the patient from mechanical

2

ventilation. The weaning trial should be performed during 2-3 weeks of assisted breathing. When the attempt to wean the patient from mechanical ventilation fails during this time frame then tracheostomy may be considered. Dr. Buddharaju ordered a tracheostomy on Mr. Bruce only 7 days after placing him on mechanically assisted ventilation. This violated the standard of care as Dr. Buddharaju had not established the medical necessity for the procedure.

_____

## CONSULTING PHYSICIAN'S REPORT

## DR. VITTORIO GUERRIERO

I am a physician licensed to practice medicine in the State of Illinois and am knowledgeable in the relevant medical issues involved in this particular action. I am also a registered nurse licensed to practice nursing in the State of Illinois. I maintain a clinical practice in the areas of medicine involved in the Walter Bruce case. I am qualified by clinical experience in the subject matter of this case both as a physician and as a registered nurse.

I have consulted with counsel for the Plaintiff and reviewed the facts based upon the medical records from Sacred Heart Hospital pertaining to the medical care and treatment rendered to Walter Bruce.

A review on the facts based upon the medical records shows that Walter Bruce, a 70 year old male was admitted to Sacred Heart Hospital in March 2012 with a diagnosis of cellulitis to the left abdominal wall and ascites. His ascites was the result of chronic alcoholism with advanced cirrhosis of the liver. Mr. Bruce also suffered from chronic obstructive pulmonary disease. During the course of his hospitalization, around mid-April, Mr. Bruce required mechanical assistance for labored breathing to assist with his own spontaneous respiratory efforts. On April 17, 2012, an electroencephalogram (EEG) interpretation was noted as "severely abnormal....compatible with diffuse encephalopathy." He was improving from a respiratory standpoint. Over the course of the next few days, Mr. Bruce's respiratory status was monitored. He had been placed on a ventilator. On April 22, 2012, his

respiratory status was described as stable on the ventilator. However, around 3:30 p.m. on April 23, 2012, Mr. Bruce was in the operating room undergoing surgery known as tracheostomy. The surgeon was Dr. Vittorio Guerriero. Within hours of this surgery, Mr. Bruce was pronounced dead.

That after reviewing the pertinent medical records it is my professional opinion that there exists a reasonable and meritorious cause for filing an action against VITTORIO GUERREIRO.

The bases for my opinion that there is a meritorious cause for filing an action against DR. VITTORIO GUERREIRO are as follows:

The standard of care requires that physicians refrain from performing procedures that are not medically indicated and not necessary. Further, the standard of care requires that physicians obtain informed consent from a patient, or a patient's representative, before performing any surgical procedure. This means that the physician must provide an explanation of the proposed procedure, available alternatives to the procedure, the foreseeable risks of the procedure and what medical benefit is being sought.

In this case, Dr. Guerriero performed a tracheostomy on Mr. Bruce when there was not clinical indication or medical necessity for it. The standard of care requires that certain steps be taken prior to converting a patient on mechanically assisted respiration to tracheostomy. First, before converting a physician must perform a trial to attempt to wean the patient from mechanical ventilation. The

2

weaning trial should be performed during 2-3 weeks of assisted breathing. When the attempt to wean the patient from mechanical ventilation fails during this time frame then tracheostomy may be considered. Dr. Guerriero performed a tracheostomy on Mr. Bruce only 7 days after placing him on mechanically assisted ventilation. This violated the standard of care as Dr. Guerriero had not established the medical necessity for the procedure.

Further, there is no evidence from the medical records that Dr. Guerriero obtained appropriate and fully informed consent prior to performing the procedure, which, as discussed above, would have to have included discussion of medical necessity and what was to be gained by the surgery. As described above, Mr. Bruce was stable on the ventilator from a respiratory standpoint. Dr. Guerriero did not obtain the informed consent for tracheostomy that a reasonably well-qualified and knowledgeable surgeon would have obtained from a patient such as Mr. Bruce, given his overall medical condition.

Dr. Guerriero further did not meet the standard of care in treating Mr. Bruce's ascites. In this aspect of his care of Mr. Bruce, he failed to perform a clinically indicated and medically necessary procedure to relieve this condition.

Ascites is the accumulation of fluid in the abdominal cavity as a result of cirrhosis of the liver. In Mr. Bruce's case, it is consistent with his advanced liver disease that was a main problem for him during this hospitalization.

Around March 24, 2012, a CT scan of the abdomen showed "huge ascites"

3

obscuring all the abdominal structures. For his liver disease, Mr. Bruce received mainstay medical treatment with prescriptions for Lasix, 20 mg daily and Spironolactone, 100 mg daily. But given his significant ascites, he needed paracentesis, whereby ascitic fluid is drained from the abdominal cavity. By removing the accumulation of fluid, intra-abdominal pressure is reduced and shortness of breath is relieved. The medical records do not reflect that this was done.

Instead of paracentesis, Dr. Guerriero surgically placed a shunt on April 11, 2012. This procedure was to drain the ascitic fluid to the jugular vein to return it to the vascular space. This is a risky surgical procedure compared to paracentesis. It was performed on Mr. Bruce with no indication that he could not benefit from or tolerate paracentesis. Soon after receiving this shunt, Mr. Bruce required transfer to the ICU. This surgical procedure did not comply with the standard of care.

And with respect to this procedure, there is no indication in the records that informed consent was given as would be expected of a reasonably well-qualified and knowledgeable surgeon treating a person such as Mr. Bruce.

4