IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

GALEN INSURANCE COMPANY,    )
    )
    Plaintiff,    )
    )
    vs.    )    Cause No. 15-cv-06993
    )
VITTORIO GUERRIERO, M.D., and    )
LEE A. HEDRICKS, Independent    )
Administrator of the ESTATE OF    )    Hon.
WALTER L. BRUCE, deceased,    )
    )
    Defendants.    )

## DEFENDANT VITTORIO GUERRIERO'S ANSWER TO PLAINTIFF'S COMPLAINT FOR RESCISSION AND DECLARATORY RELIEF

NOW COMES the defendant, VITTORIO GUERRIERO, M.D., by and through his attorney, Patrick R. Grady of Wolfe & Jacobson, Ltd, and for his Answer to Plaintiff's Complaint for Rescission and Declaratory Relief, and states the following;

### JURISDICTION AND VENUE

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C.A. §1332 and 28 U.S.C.A. § 2201 based on diversity of citizenship between the Plaintiff and Defendants.

**ANSWER:**    This defendant admits that if plaintiff's claim was properly brought against this defendant, the court would have jurisdiction under 28 U.S.C.A. §1332 and 28 U.S.C.A. § 2201.

2.    The matter in controversy in this cause exceeds $75,000. The insurance policy at issue in this matter has a limit of liability of $1 million per claim and $3 million in the aggregate. The underlying claimants seek damages against the insured in excess of $50,000. The costs and fees to defend against the lawsuit will exceed $25,000.

Therefore, the amount in controversy exceeds $75,000.

**ANSWER:**   Admit.

3.      Venue is proper in this matter because certain events giving rise to this matter occurred in this judicial district and the Defendants are subject to the personal jurisdiction of this Court.  28 U.S.C.A. §1391.

**ANSWER:**   This defendant admits that if plaintiff's claim was properly brought against this defendant venue would be proper in this District.

## THE PARTIES

4.      Plaintiff, Galen Insurance Company ("Galen") is a Missouri corporation with its principal place of business in St. Louis, Missouri.

**ANSWER:**   Upon information and belief, admit.

5.      Defendant Vittorio Guerriero, M.D. ("Dr. Guerriero") is an individual residing in Illinois, who has or currently does practice medicine in Illinois.

**ANSWER:**   Admit.

6.      Defendant Lee A. Hedricks is an individual residing in Illinois. Mr. Hedricks is joined in this suit as a necessary party defendant.

**ANSWER:**   Admit.

## FACTUAL ALLEGATIONS

### Prior Suspension and Revocation of Dr. Guerriero's Privileges at Lincoln Park Hospital

7.      Previously, in January of 2005, Guerriero had surgical privileges at Lincoln Park Hospital, which were revoked.

**ANSWER:**   Admit.

8.      On January 20, 2005, Guerriero was informed that his privileges to perform gynecological surgery at Lincoln Park Hospital were revoked.

**ANSWER:**   Denied.

9.      On January 21, 2005, in the course of performing surgery to remove an abdominal tumor from a patient, Guerriero excised an ovary.

**ANSWER:**   Denied.

10.     Shortly thereafter, Guerriero's hospital privileges were suspended. After peer review, the suspension was upheld.

**ANSWER:**   Denied.

### Criminal Investigation of Dr. Guerriero

11.     Beginning in or before 2012, Guerriero performed surgeries at Sacred Heart Hospital in Chicago, Illinois, including tracheostomies.

**ANSWER:**   Admit.

12.     In 2011, the FBI began an investigation of the executives, administrators and physicians associated with Sacred Heart Hospital. As part of the investigation, the FBI recorded telephone calls and in-person conversations.

**ANSWER:**   This defendant has insufficient information and knowledge to form a belief as to the truthfulness of the allegations in paragraph 12.

13.     On March 5, 2013, investigators from U.S. Centers for Medicare and Medicaid Services and the State of Illinois also arrived at Sacred Heart Hospital to conduct an investigation of the hospital's intubations and tracheotomies, and quality assurance and performance improvement protocols.

**ANSWER:**   This defendant has insufficient information and knowledge to form a belief as to the truthfulness of the allegations in paragraph 12.

14.   On April 15, 2013, criminal proceedings were instituted against certain owners and doctors associated with Sacred Heart Hospital. By criminal complaint, the United States of America charged multiple defendants including Edward J. Novak, Roy M. Payawal, Venkateswara R. Kuchipudi, Percy Conrad May Jr., Subir Maitra and Shanin Moshire with having participated in a kickback conspiracy, in violation of Title 18, U.S .C. §371.

**ANSWER:**   Upon information and belief and as supported by Exhibit A attached to plaintiff's complaint, admit.

15.   The 2013 Criminal Complaint included the sworn affidavit of F.B.I. Officer Cathy A. Barbour. See Exhibit A. Barbour attested that the FBI was investigating the executives, administrators and physicians associated with Westside Community Hospital, Inc., doing business as Sacred Heart Hospital. Barbour attested that the FBI was being assisted in the investigation by Special Agents of the United States Department of Health and Human Services, Office of Inspector General.

**ANSWER:**   There are no allegations directed against this defendant in paragraph 15, as such, no answer is required. To the extent it is deemed paragraph 15 contains allegations directed against this defendant, said allegations are denied.

16.   In Barbour's affidavit, she attested that these individuals engaged in a scheme to defraud Medicare and Medicaid by submitting and causing the submission of claims and the presentment of hospital cost reimbursement reports seeking  payment

for emergency care evaluation, testing and observation services that were not medically necessary.

**ANSWER:** This defendant objects to the allegations in paragraph 16 as unanswerable because "these individuals" are not identified. Answering further, there are no allegations directed against this defendant in paragraph 16, as such, no answer is required. To the extent it is deemed paragraph 16 contains allegations directed against this defendant, said allegations are denied.

17. Barbour further attested that these individuals had unnecessarily performed sedation, intubation and tracheostomy procedures on elderly and disabled patients, because of the significant reimbursement received from Medicare and Medicaid. The treating physicians allegedly unnecessarily intubated patients, ordered the administration of high levels of sedation to the intubated patients to prevent them from breathing on their own, and then ordered a tracheotomy.

**ANSWER:** This defendant objects to the allegations in paragraph 17 as unanswerable because "these individuals" are not identified. Answering further, there are no allegations directed against this defendant in paragraph 17, as such, no answer is required. To the extent it is deemed paragraph 17 contains allegations directed against this defendant, said allegations are denied.

18. Barbour identified the physicians that participated in the unnecessary tracheostomy procedures as Physician D and Physician E.

**ANSWER:** Denied.

19. The Barbour Affidavit indicated that Physician E had been and was continuing to be investigated, particularly regarding whether all of the tracheostomy

procedures he performed were medically necessary, and for the high mortality rate for patients who received tracheostomies from Physician E.

**ANSWER:**   Denied.

20.   Barbour first attested that the investigation revealed that none of the tracheotomy patient files reviewed as part of the investigation contained documents explaining the decision to intubate the patients, and there was no documentation explaining any efforts to wean the patients from the ventilators.

**ANSWER:**   There are no allegations directed against this defendant in paragraph 20, as such, no answer is required. To the extent it is deemed paragraph 20 contains allegations directed against this defendant, said allegations are denied.

21.   On or before August of 2013, Dr. Guerriero was aware that he was the "Physician E" identified in the criminal complaint.

**ANSWER:**   Denied.

22.   On or before August of 2013, Dr. Guerriero was aware that he was publicly identified as the subject of the investigation regarding whether the procedures he performed at Sacred Heart Hospital were medically necessary.

**ANSWER:**   Denied.

**The Galen Insurance Policy Application and Issuance of the Galen Policies**

23.   On or before December 24, 2013, Dr. Guerriero executed a Galen Physicians Application for Professional Liability Insurance.

**ANSWER:**   Admit.

24.   Dr. Guerriero answered "no" to the following questions:

      13.   Has any hospital or other institution ever restricted, reduced, refused, or suspended your privileges or invoked

probation?

> 17.    Have you ever been investigated, charged with, or convicted of a violation of federal, state or local law other than routine traffic offenses?

> 75.    Are there any claims or suits threatened or pending against you or has there been any circumstance, occurrence, incident or accident that is likely to give rise to a claim or suit that has not been reported to your current or prior insurers?

**ANSWER:**    Admit.

25.    In reliance upon the information and representations made to Galen by Dr. Guerriero, Galen issued claims made and reported Medical Professional Liability Insurance Policy no. IL-1342 to Vittorio Guerriero M.D. for the policy period of December 16, 2013 to December 16, 2014. The limits of liability are $1 million per claim, and $3 million in the aggregate.

**ANSWER:**    This defendant admits Galen issued Policy Number IL-1342 to Dr. Vittorio Guerriero with a policy period of December 16, 2013 to December 16, 2014. Answering further, this defendant has insufficient and knowledge to form a belief as to the truthfulness of the remaining allegations in paragraph 25.

26.    On November 5, 2014, Guerriero signed and submitted a Renewal Application for Physicians and Allied Professionals. Guerriero checked "no" in response to the following questions:

> 16.    During the past year, has any facility or organization limited or eliminated your privileges?

> 17.    During the past year, have you been investigated, charged with, or convicted of a violation of a federal, state or local law other than routine traffic offenses?

19. During the past year, have you become aware of any claim arising from professional services you rendered?

21. Have you had or are you aware of a claim, suit or incident likely to become a medical malpractice claim?

**ANSWER:** Admit.

27. In reliance upon the information and representations made to Galen by Dr. Guerriero, Galen issued claims made and reported Medical Professional Liability Insurance Policy no. IL-1537 to Vittorio Guerriero M.D. for the policy period of December 16, 2014 to December 16, 2015. The limits of liability are $1 million per claim, and $3 million in the aggregate.

**ANSWER:** This defendant admits Galen issued Policy Number IL-1537 to Dr. Vittorio Guerriero for the policy period of December 16, 2013 to December 16, 2014 with the alleged limits. Answering further, this defendant has insufficient and knowledge to form a belief as to the truthfulness of the remaining allegations in paragraph 27.

### The Hedricks Claim

28. On July 25, 2013, Reginald Robinson, as Special Administrator of the Estate of Katheryn Robinson, and Lee A. Hedricks, as Special Administrator of the Estate of Walter Bruce filed civil action no. 2013-L-008445 in the Court of Cook County. The Defendants included Edward J. Novak, Roy M. Payawal, Venkateswara R. Kuchipudi, Percy Conrad May, Subir Maitra, and Shanin Moshiri. On September 5, 2013, the matter was removed to the United States District Court for the Northern District of Illinois, no. 1:13-cv-06353.

**ANSWER:** Upon information and belief, admit.

29.   On September 24, 2013, the Plaintiffs filed a First Amended Complaint, and added Dr. Guerriero as a defendant.

**ANSWER:**   Denied.

30.   On January 3, 2014, the Court dismissed the matter, without prejudice.

**ANSWER:**   Upon information and belief, admit.

31.   On April 23, 2014, Hedricks, as Independent Administrator of the Estate of Walter L. Bruce, deceased, filed civil action no. 14 L 004522 in the Circuit Court of Cook County, Illinois against Edward J. Novak, Roy M. Payawal, Anthony J. Puorro, Noemi Velgara, Venkata Buddharaju, M.D., and Vittorio Guerriero, M.D. ("Hedricks Lawsuit"). On January 15, 2015, Hedricks filed a Second Amended Complaint.

**ANSWER:**   Admit.

32.   In the operative complaint, Hedricks alleges that Guerriero was the subject of the FBI investigation and was Physician identified in the federal indictment.

**ANSWER:**   Denied.

33.   Hedricks further alleges that a Sacred Heart employee reviewed certain tracheotomy patient files in connection the CMS and State of Illinois investigation and found that none contained documentation explaining any efforts to wean the patients from the ventilators or the physician's decision to intubate the patients.   Guerriero was the surgeon for each of the reviewed files, and allegedly performed tracheotomies in the absence of an order for a surgical referral from the pulmonologist. Hedricks alleges that the mortality rate for Medicare patients who received tracheotomies from Guerriero far exceeded the morality rate for patients

9

who received tracheotomies in Illinois.

**ANSWER:** This defendant admits the above allegations are contained in the complaint filed in State Court but denies the substance of those allegations.

34. Hedricks alleges that on or about March 23, 2012, Walter Bruce was admitted to Sacred Heart Hospital suffering from cellulitis of the left abdominal wall and peritoneal cavity fluid. Dr. Guerriero participated in his care, treatment and surgical procedures.

**ANSWER:** This defendant admits the above allegations are contained in the complaint filed in State Court but denies the substance of those allegations.

35. Hedricks alleges that on or about April 23, 2012, Dr. Guerriero performed an unnecessary tracheotomy on Walter Bruce and placed a Groshong catheter in him. Several hours later, Bruce was found deceased in his hospital room.

**ANSWER:** This defendant admits the above allegations are contained in the complaint filed in State Court but denies the substance of those allegations.

36. In Count 1, Conspiracy, Hedricks alleges that the defendants agreed and conspired to and did solicit physicians to perform medically unnecessary tracheotomies on Sacred Heart patients because they provided substantial insurance reimbursement income for the hospital. Hedricks alleges that Guerriero performed a tracheotomy on Walter Bruce which he knew was not medically necessary to preserve the health and well-being of Bruce, but was performed in furtherance of the Defendants' scheme to defraud Medicare and Medicaid.

**ANSWER:** This defendant admits the above allegations are contained in the complaint filed in State Court but denies the substance of those allegations.

37.    In Count II, Fraud, Hedricks alleges that Guerriero and the other defendants agreed and conspired to provide medically unnecessary and avoidable tracheotomies to Medicare/Medicaid inpatients at Sacred Heart Hospital, including Walter Bruce, in furtherance of a scheme to defraud Medicare and Medicaid. Hedricks further alleges that Guerriero and the other defendants agreed and conspired to deceitfully obtain consent from the Medicare and Medicaid inpatients to provide unnecessary medical treatment, in furtherance of their scheme to defraud Medicare and Medicaid.

**ANSWER:**    This defendant admits the above allegations are contained in the complaint filed in State Court but denies the substance of those allegations.

38.    Hedricks alleges that Guerriero obtained consent for the tracheotomy from Hedricks based upon the false and intentionally deceitful statement that the tracheotomy was medically necessary to preserve the health and well-being of Bruce. As a result, Bruce underwent a medically unnecessary tracheotomy, which resulted in significant pain and suffering and his death on April 23, 2012.

**ANSWER:**    This defendant admits the above allegations are contained in the complaint filed in State Court but denies the substance of those allegations.

39.    In Count III, Medical Battery, Hedricks alleges that because of Guerriero's false and deceitful representation that the tracheotomy was a medically necessary procedure, Bruce underwent a medically unnecessary tracheotomy resulting in significant pain and suffering and his death.

**ANSWER:**    This defendant admits the above allegations are contained in the complaint filed in State Court but denies the substance of those allegations.

40.     In Count IV, Wrongful Death, Hedricks alleges that Guerriero committed one or more of the following careless and negligent acts and/or omissions, which resulted in Bruce's wrongful death:

    a.     performed a tracheotomy that was not clinically indicated;

    b.     performed a tracheostomy that was not medically necessary;

    c.     failed to perform paracentesis to treat the Plaintiff's Decedent's ascites;

    d.     carelessly, negligently and improperly placed a shunt in Plaintiff's decedent;

    e.     failed to obtain informed consent for the tracheotomy.

    f.     failed to obtain informed consent for the shunt placement.

**ANSWER:**     This defendant admits the above allegations are contained in the complaint filed in State Court but denies the substance of those allegations

41.     In Count V, Medical Negligence-Survival, Hedricks seeks recovery pursuant to 755 ILCS 5/27-6, et seq., the Illinois Survival Act.

**ANSWER:**     This defendant admits the above allegations are contained in the complaint filed in State Court but denies the substance of those allegations.

42.     On December 18, 2014, Hedricks obtained an order of default against Dr. Guerriero.

**ANSWER:**     Admit.

43.     On March 31, 2015, Guerriero first reported the Hedricks matter to Galen.

**ANSWER:**     Admit.

12

44.     Dr. Guerriero has demanded that Galen pay the past and future costs to defend and indemnify him against the Hedricks Lawsuit.  Galen contends that it is entitled to rescind the Galen Policy, and that it has no obligation to defend or indemnify Dr. Guerriero against the Hedricks Lawsuit. Therefore, an actual and immediate controversy exists between the parties.

**ANSWER:**  This defendant tendered its defense to Galen, which Galen is obligated to provide under the terms of its policy.  Based on Galen's contentions it asserts in an attempt to avoid its contractual obligation, this defendant admits there is a controversy between the parties.

## COUNT I

## DECLARATION OF RESCISSION

45.     Galen hereby incorporates the allegations contained in paragraphs I through 44 of this Complaint as though set forth fully herein as this paragraph 45.

**ANSWER:**  This defendant incorporates, by reference, its answers to paragraphs 1 through 44, as its answer to paragraph 45, as if fully set forth herein.

46.     In December of 2013, Dr. Guerriero submitted an application for insurance to Galen. In determining whether and under what terms it might accept the risk, Galen relied upon the representations and information provided to it by Dr. Guerriero.

**ANSWER:**   This defendant admits he submitted an application for insurance to Galen on December 24, 2013.  Answering further, this defendant has insufficient information and knowledge to form a belief as to the truthfulness of the remaining allegations in paragraph 46.

47.    Despite the fact that Dr. Guerriero was being investigated by the federal and state governments for Medicaid and Medicare fraud and performing unnecessary surgical procedures which had an increased mortality rate to his patients, Dr. Guerriero represented to Galen that he had never been investigated, charged with, or convicted of a violation of federal, state or local law other than routine traffic offenses.

**ANSWER:**    This defendant admits that he denied being investigated, denied he was charged with or convicted of a violation of federal, state or local law other than routine traffic offenses.    Answering further, this defendant denies all remaining allegations in paragraph 47.

48.    The investigation, allegations of unnecessary surgeries and the deaths of his patients after surgery also constituted circumstances, occurrences, or incidents that were likely to give rise to claims or suits against Dr. Guerriero, which were not disclosed to Galen.

**ANSWER:**    This defendant denies he was under investigation, that he performed or was accused of performing unnecessary surgeries and that any act or omission on his part caused the death of his patients.    Answering further, this defendant denies all remaining allegations in paragraph 48.

49.    Additionally, although Dr. Guerriero's surgical privileges had previously been suspended and then revoked at Lincoln Park Hospital, Dr. Guerriero represented to Galen that no hospital had ever restricted, reduced, refused, or suspended his privileges.

**ANSWER:**    Denied.

50.     Section V. CONDITIONS contains the following provision:

    E.    Declarations and Applications
By acceptance of this policy, each Named Insured agrees that the statements in the Declaration Page and the applications submitted in connection with policy are its, his or her agreements and representations and that this policy is issued in reliance upon the truth of such representations, that they are deemed material parts of this policy and that this policy embodies all agreements existing between each Named Insured and the Company or any of its agents relating to this insurance.

**ANSWER:**     This defendant admits the policy states as represented in paragraph 50.

51.     Dr. Guerriero's misrepresentations and/or omissions were material to the risk assumed by Galen, thereby entitling Galen to rescind the policy of insurance it issued to Dr. Guerriero.

**ANSWER:**     This defendant denies he made any misrepresentatives and/or omissions and denies all remaining allegations in paragraph 51.

52.     Because the policy issued to Dr. Guerriero is void, Galen also has no obligation to defend or indemnify Dr. Guerriero against the Hedricks Lawsuit.

**ANSWER:**     This defendant denies the policy is void or that Galen is excused from providing a defense for which Dr. Guerriero paid policy premiums.

53.     Galen agrees to tender the premium to Dr. Guerriero upon judgment of rescission.

**ANSWER:**     This defendant denies plaintiff is entitled to rescission. Answering further, this defendant has insufficient information and knowledge to form a belief as to the truthfulness of the remaining allegations in paragraph 53.

WHEREFORE, Defendant Vittorio Guerriero demands judgment in his favor and the Court's declaration that Galen is obligated to provide him with a defense for which he paid insurance premiums.

## COUNT II

## INSURING AGREEMENT

54.    Galen hereby incorporates the allegations contained in paragraphs 1 through 53 of this Complaint as though set forth fully herein as this paragraph 54.

**ANSWER:**    This defendant incorporates, by reference, its answers to paragraphs 1 through paragraph 53, as its answer to paragraph 54 as if fully set for herein.

55.    The Galen Policy contains the following notice:

NOTICE

PLEASE REVIEW THIS POLICY CAREFULLY

THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILTY FOR THOSE CLAIMS THAT:

A.    ARISE FROM INCIDENTS OR EVENTS THAT HAPPEN WHILE COVERAGE U NDER THIS POLICY IS IN FORCE AND THAT INVOLVE YOUR PROFESSIONAL SERVICES; AND

B.    THAT ARE FIRST MADE AGAINST YOU AND ARE REPORTED TO THE COMPANY DURING THE POLICY PERIOD, INCLUDING ANY EXTENDED REPORTING PERIOD, OR DURING ANY OPTIONAL EXTENDED REPORTING PERIOD PROVIDED THROUGH AN ENDORSEMENT.

**ANSWER:**    This defendant admits the policy states as set forth in paragraph 55.

[55].    The Insuring Agreement of the Galen Policy provides, in pertinent part, as follows:

I.    COVERAGE

The Company will pay on your behalf all sums which You are legally obligated as Damages for Claims. The Company's obligations under this policy only apply to Claims first made against You and reported to the Company during the Policy Period or, if applicable, the Extended Reporting Period or Optional Extended Reporting Period. This insurance only applies to Medical Incidents arising out of Professional Services rendered (or not rendered) by You, or by any person for whose acts You are legally responsible, or Peer Review services rendered by You. The Company's obligations under this policy are subject to the Per-Claim Limit of Liability, Annual Aggregate Limit of Liability, exclusions, limitations, conditions, and all other terms of this policy,...

**ANSWER:**   This defendant admits the policy states as set forth in paragraph [55].

56.    Even if the Galen Policy were not void and unenforceable based upon Dr. Guerriero's material misrepresentations in the Galen Policy Applications, the Hedricks Lawsuit is otherwise not covered because the Hedricks claim was not first made and reported during the Galen Policy Period, as required to invoke coverage. Galen therefore has no obligation to defend or indemnify Guerriero against the Hedricks Lawsuit.

**ANSWER:**   This defendant denies all allegations in paragraph 56, stated and/or implied.

WHEREFORE, Defendant Vittorio Guerriero demands judgment in his favor and the Court's declaration that Galen is obligated to provide him with a defense for which he paid insurance premiums.

## COUNT III

## PRIOR NOTICE

57.     Galen hereby incorporates the allegations contained in paragraphs 1 through 56 of this Complaint as though set forth fully herein as this paragraph 57.

**ANSWER:**  This defendant incorporates, by reference, its answers to paragraphs 1 through 56 as its answers to paragraph 57 as if fully set herein.

58.     The Insuring Agreement of the Galen Policy provides, in pertinent part, as follows:

I.     COVERAGE

The Company will pay on Your behalf all sums which You are legally obligated as Damages for Claims. The Company's obligations under this policy only apply to Claims first made against You and reported to the Company during the Policy Period or, if applicable, the Extended Reporting Period or Optional Extended Reporting Period. This insurance only applies to Medical Incidents arising out of Professional Services rendered (or not rendered) by You, or by any person for whose acts You are legally responsible, or Peer Review services rendered by You. The Company's obligations under this policy are subject to the Per-Claim Limit of Liability, Annual Aggregate Limit of Liability, exclusions, limitations, conditions, and all other terms of this policy, and provided always that such Medical  Incident happens:

A.     on or after the Effective Date or Endorsement  Effective  Date but during  the Policy Period;  or

B.     at any time prior to the Effective Date or Endorsement Effective Date, if:

1.     such Medical Incident happens on or subsequent to the applicable Retroactive Date; and

2.     You did not know or could not have reasonably foreseen that such Medical Incident might be expected to be the basis of the Claim on the Effective Date of this policy or the first claims made policy issued by the Company to which this policy is a renewal, whichever is earlier;...

**ANSWER:**   This defendant admits the policy states as set forth in paragraph 58.

59.   "Medical Incident" is defined in the Galen Policy as:

> any act, error or omission in the rendering of or failure to render Professional Services by a Named Insured, an Insured Employee, or any person for whom a Named Insured is legally responsible. For purposes of determining the date of occurrence of a Medical Incident, all Bodily Injury or Damages arising out of any series of treatments, or series of exposures or interrelated events subject to eth same general conditions, will be deemed as occurring at the time of the occurrence of the first of such series of treatments, events or exposures to the same general conditions.

**ANSWER:**   This defendant admits the policy states as set forth in paragraph 59.

60.   Even if the Galen Policy were not void and unenforceable based upon Dr. Guerriero's material misrepresentations in the Galen Policy Application, the Hedricks Lawsuit is otherwise not covered because prior to inception of the Galen Policy, Guerriero knew or could have reasonably foreseen that his acts, errors or omissions might be expected to be the basis of a claim or suit.

**ANSWER:**   This defendant denies all allegations in paragraph 60, stated and/or implied.

61.   Prior to the inception of the Galen Policy, Guerriero was publicly accused by federal and state authorities of performing unnecessary tracheostomy procedures on elderly and disabled patients, including Walter Bruce. Dr. Guerriero was also publicly accused of having unreasonably high mortality rates.

**ANSWER:**   Denied.

19

62.     Prior to inception of the Galen Policy, Dr. Guerriero performed a tracheostomy on Walter Bruce. Bruce died shortly after the procedure. Bruce was one of the subjects of the FBI investigation.

**ANSWER:**   This defendant admits that he performed a tracheostomy and that Walter Bruce died on April 23, 2012.   Answering further this defendant denies all remaining allegations in paragraph 62 stated and/or implied.

63.     These constitute acts, errors or omissions that Dr. Guerriero knew or could have reasonably foreseen might be expected to be the basis of a Claim against him. Accordingly, even assuming the Galen Policy were not void and unenforceable by reason of Dr. Guerriero's material misrepresentations in the Galen Policy Application, the Hedricks Lawsuit is outside the scope of coverage. Galen therefore has no obligation to defend or indemnify Dr. Guerriero against the Hedricks Law suit.

**ANSWER:**   This defendant denies all allegations in paragraph 63, stated and/or implied.

WHEREFORE, Defendant Vittorio Guerriero demands judgment in his favor and the Court's declaration that Galen is obligated to provide him with a defense for which he paid insurance premiums.

## COUNT IV

## EXCLUSION L

64.     Galen hereby incorporates the allegations contained in paragraphs 1 through 63 of this Complaint as though set forth fully herein as this paragraph 64.

**ANSWER:** This defendant incorporates, by reference, its answers to paragraphs 1 through 63 as its answer to paragraph 64 as if fully set forth herein.

65. The Galen Policy contains Exclusion L, which provides that the insurance does not apply to any of the following, and the Company will not pay any Damages or Claim Expenses, or provide a defense, for any of the following:

> L. any Claim arising out of any dishonest, fraudulent, criminal or malicious act or omission, or misrepresentation, by, at the direction of, or with the knowledge or consent of, any Insured; however, Claims Expenses which would have been available under this policy will be reimbursed if it is determined by a court that the Insured did not commit a fraudulent or dishonest act or omission.

**ANSWER:** This defendant admits the policy states as set forth in paragraph 65.

66. Even if the Galen Policy were not void and unenforceable based upon Dr. Guerriero's material misrepresentations in the Galen Policy Application, the Hedricks Lawsuit is otherwise not covered because the Hedricks claim arises out of alleged dishonest, fraudulent, criminal and/or malicious acts or omissions by Dr. Guerriero.

**ANSWER:** This defendant denies all allegations in paragraph 66, stated and/or implied.

67. In the complaint, Hedricks alleges that Dr. Guerriero participated in a conspiracy to perform unnecessary tracheostomy procedures on elderly and disabled patients, including Walter Bruce, for the purpose of generating income for Sacred Heart Hospital and its physicians.

**ANSWER:** This defendant admits the underlying complaint speaks for itself. Answering further, this defendant denies the substance of the allegations set forth in the

underlying complaint as reference in paragraph 67.

68.     Hedricks asserts causes of action against Dr. Guerriero for conspiracy, fraud, and medical battery.

**ANSWER:**   This defendant admits the underly complaint speaks for itself. Answering further, this defendant denies the substance of the allegations set forth in the underlying complaint as referenced in paragraph 68.

69.     Exclusion L therefore applies to preclude coverage, and Galen has no obligation to defend or indemnify Guerriero against the Hedricks Lawsuit.

**ANSWER:**   Denied.

WHEREFORE, Defendant Vittorio Guerriero demands judgment in his favor and the Court's declaration that Galen is obligated to provide him with a defense for which he paid insurance premiums.

## COUNT IV

## EXCLUSION O

70.     Galen hereby incorporates the allegations contained in paragraphs I through 69 of this Complaint as though set forth fully herein as this paragraph 70.

**ANSWER:**   This defendant incorporates, by reference, his answers to paragraphs 1 through 69 of the complaint as his answer to paragraph 70 as if fully set forth herein.

71.     The Galen Policy contains Exclusion O, which provides that the insurance does not apply to any of the following, and the Company will not pay any Damages or Claim Expenses, or provide a defense, for any of the following:

> O.     any Claim arising out of Bodily Injury which was expected or intended by an Insured regardless of whether or not such act or

omission was intended to cause the specific Bodily Injury sustained.

**ANSWER:**   This defendant admits the policy states as set forth in paragraph 71.

72.   Even if the Galen Policy were not void and unenforceable based upon Dr. Guerriero's material misrepresentations in the Galen Policy Application, the Hedricks Lawsuit is otherwise not covered because the Hedricks claim arises out of Bodily Injury which was expected or intended by Dr. Guerriero.

**ANSWER:**   This defendant denies all allegations in paragraph 72, stated and/or implied.

73.   In the complaint, Hedricks alleges that Dr. Guerriero participated in a conspiracy to perform unnecessary tracheostomy procedures on elderly and disabled patients, including Walter Bruce, for the purpose of generating income for Sacred Heart Hospital and its physicians, which resulted in bodily injury to his patients.

**ANSWER:**   This defendant admits the underlying complaint speaks for itself. Answering further, this defendant denies the substance of the allegations set forth in the underlying complaint as referenced in paragraph 73.

74.   Exclusion L therefore applies to preclude coverage, and Galen has no obligation to defend or indemnify Guerriero against the Hedricks Lawsuit.

**ANSWER:**   Denied.

WHEREFORE, Defendant Vittorio Guerriero demands judgment in his favor and the Court's declaration that Galen is obligated to provide him with a defense for which he paid insurance premiums.

## <u>COUNTERCLAIM FOR BREACH OF INSURANCE CONTRACT</u>

NOW COMES the defendant, VITTORIO GUERRIERO M.D., by and through his attorney, Patrick R. Grady of Wolfe & Jacobson, Ltd., and for his Counterclaim for Breach of Insurance Contract against GALEN INSURANCE COMPANY and LEE A HEDRICKS, Independent Administrator of the ESTATE OF WALTER L. BRUCE, deceased, states the following:

### JURISDICTION AND VENUE

1.      This Counterclaim is brought pursuant to Rule 13(a) of the Federal Rules of Civil Procedure.

2.      This Court has jurisdiction to hear this Counterclaim pursuant to 28 U.S.C.A §1332 and 28 U.S.C.A. §2201 based on diversity of citizenship between plaintiff and defendants.

3.      The amount in controversy exceeds $75,000 based on GALEN INSURANCE COMPANY's policy limits of $1 million per claim and the amount of the alleged statutory minimum damages of $50,000 and the estimated cost to GALEN INSURANCE COMPANY defending Dr. Vittorio Guerriero against the State Claim to exceed $25,000.

4.      Venue is proper because the alleged events giving rise to this Counterclaim for Breach of Insurance Contract substantially occurred within the jurisdictional boundaries of the Northern District of Illinois and the defendants are subject to personal jurisdiction of the Court.

## FACTUAL ALLEGATIONS

5.     Galen Insurance Company is a Missouri corporation with its principal place of business in St. Louis Missouri.

6.     Doctor Vittorio Guerriero currently resides in Lawrenceville, Illinois, where he practices medicine.

7.     The necessary party, Lee A. Hedricks, resides in Illinois and is the Administrator of the Estate of Walter L. Bruce, deceased.

## UNDERLYING CIVIL COMPLAINT

8.     Lee A. Hedricks, Administrator of the Estate of Walter L. Bruce, file his Second Amended Complaint against several defendants, including Dr. Vittorio Guerriero, alleging Conspiracy, Fraud, Medical Battery, Medical Negligence-Wrongful Death and Medical Negligence-Survival.   *See* Lee A. Hedricks' Second Amended Complaint, a true and correct copy of which is attached hereto as Exhibit A, bates #GUS00001

9.     In Count IV, Medical Negligence-Wrongful Death, Lee A. Hedricks, as Administrator, alleged Dr. Vittorio Guerriero breached his duty of care when rendering care to Walter L. Bruce, plaintiff's decedent, by the following acts and/or omissions:

a.     performed a tracheotomy that was not clinically indicated;

b.     performed a tracheotomy that was not medically necessary;

c.     failed to perform paracentesis to treat the plaintiff's decedent's ascites;

d.     carelessly, negligently and improperly placed a shunt in plaintiff's decedent;

e.     failed to obtain informed consent for the tracheotomy;

f.     failed to obtain informed consent for the shunt placement.

*See* Exhibit A, bates GUS00014.

## GALEN INSURANCE COMPANY'S POLICY NUMBER IL-1537

10.     Galen Insurance Company's Policy Number IL-1537 limits the coverage provided under the policy with the following:

**"THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILITY FOR THOSE CLAIMS THAT:**

     **A.**     **ARISE FROM INCIDENTS OR EVENTS THAT HAPPEN WHILE COVERAGE UNDER THIS POLICY IS IN FORCE AND THAT INVOLVE YOUR PROFESSIONAL SERVICES;**

     **B.**     **ARE FIRST MADE AGAINST YOU AND ARE REPORTED TO THE COMPANY DURING THE POLICY PERIOD, INCLUDING ANY EXTENDED REPORTING PERIOD, OR DURING ANY OPTIONAL EXTENDED REPORTING PERIOD PROVIDED THROUGH AN ENDORSEMENT."**

*See* Galen Insurance Company's Policy Number IL-1537, a true and correct copy of which is attached hereto as Exhibit B, bates #GUS00050.

11.     The Galen Insurance Company Policy Number IL-1537 Insuring Agreement provides for the following coverage:

"1.     COVERAGE

The Company will pay on Your behalf all sums which You are legally obligated to pay as Damages for Claims. The Company's obligations under this policy only apply to Claims first made against You and reported to the Company during the Policy Period . . . . This insurance only applies to Medical Incidents arising out of Professional Services rendered (or not rendered) by You . . . ."

*See* Exhibit B, bates #GUS00054.

12.     The policy period for Galen Insurance Company's Policy Number IL-1537 is from December 16, 2014 through December 16, 2015. *See* Exhibit B, bates #GUS00047.

13.    Dr. Vittorio Guerriero's obligations when a claim is made include, among others, the following:

"If there is a Claim or the Insured reasonably believes there will be, the Insured must do the following:

1.    notify the Company or the Company's representative, in writing, as soon as practicable;"

*See* Exhibit B, bates #GUS00062.

## BREACH OF INSURANCE CONTRACT

14.    Dr. Vittorio Guerriero entered into a contract of insurance, Policy Number IL-1342 with the policy period of December 16, 2013 through December 16, 2014, that was renewed under Policy Number IL-1537 with the policy period of December 16, 2014 through December 16, 2015. *See* Exhibit B, bates #GUS00047 and Galen Insurance Company's Policy Number IL-1342, a true and correct copy of which is attached hereto as Exhibit C, bates #GUS00027.

15.    Dr. Vittorio Guerriero made all premium payments required of him for Galen Insurance Company's Policies IL-1342 (policy period 12/16/13-12/16/14) and IL-1537 (policy period 12/16/14-12/16/15).

16.    Within a reasonable time after learning he was a defendant in the suit file by Lee A. Hedricks, as Administrator of the Estate of Walter L. Bruce, deceased, Dr. Vittorio Guerriero notified Galen Insurance Company on March 31, 2015, through the agent of Galen Insurance Company.

17.    The Insuring Agreement in Galen Insurance Company's Policy Number IL-1537 states "[t]he Company has the right and duty to defendant any Claim against You seeking Damages which, if awarded, would be covered by this policy." *See* Exhibit B,

bates #GUS00054.

18.     Notwithstanding Galen Insurance Company's obligation to defend Dr. Vittorio Guerriero against the claims asserted in the Complaint filed by Lee A. Hedricks, Administrator of the Estate of Walter L. Bruce, deceased, cause number 14 L 004522, in State court for monetary damages, Galen declined to provide Dr. Guerriero with a defense and forcing its insured to face litigation without the assistance of counsel provided by Galen for which he paid insurance premiums and Galen had a duty to provide.

19.     As the result of Galen Insurance Company's decision to allow its insured, Dr. Vittorio Guerriero, to face malpractice litigation without the assistance of counsel for which he paid insurance premiums, Dr. Guerriero is forced to expend his personal funds to secure legal counsel to assist with his defense and will be forced to pay any judgment or settlement out of his own funds.

WHEREFORE, the defendant, VITTORIO GUERRIERO M.D. prays for judgment in his favor and for the Court's order holding:

a.     that Galen Insurance Company's Policy Number IL-1537 obligates Galen to provide Dr. Vittorio Guerriero with a defense against the allegations in State Court Complaint Number 14 L 004522;

b.     that Galen Insurance Company is obligated to reimburse Dr. Vittorio Guerriero for any attorney fees, costs as well as interest on attorney fees and costs expended by Dr. Guerriero to defend himself against the allegations in State Court Complaint Number 14 L 004522; and

c.     any other recovery and/or relief the Court deems appropriate, now or may so deem appropriate in the future.

VITTORIO GUERRIERO

By:      ___/s/ Patrick R. Grady___
             Wolfe & Jacobson, Ltd
             25 East Washington Street
             Suite 700
             Chicago, Illinois 60602
             (312) 855-0500
             Counsel for Defendant
             VITTORIO GUERRIERO
             F:\FILE\11023\ANSPLACOM..docx