IN THE CIRCUIT COURT OF COLE COUNTY, MISSOURI

CHLORA LINDLEY-MYERS, Director, )
Missouri Department of Commerce and )
Insurance, State of Missouri )
                                                                  )
                Petitioner, )
                                          ) Case No. 17AC-CC00005
v. )
                                          )
GALEN INSURANCE COMPANY, )
                                          )
                Respondent. )

## THIRD ANNUAL REPORT

Chlora Lindley-Myers, Director of the Missouri Department of Commerce and Insurance ("Department")[1], in her capacity as Liquidator, of Galen Insurance Company, pursuant to ¶ 10 of this Court's Judgment, Decree and Final Order of Liquidation dated May 31, 2017, ("Liquidation Order") in the above captioned matter and §§ 375.1150, RSMo, *et seq.*, submits this Third Annual Report ("Report"). The Liquidator continues to administer the Galen Insurance Company ("Galen") estate. This Report includes information concerning Galen's history, actions taken by the Liquidator in accordance with the Liquidation Order, and Galen's current financial condition.

---

[1] On January 17, 2019, the Governor signed Executive Order 19-02. That Executive Order provides that, "no sooner than August 28, 2019," the Department of Insurance, Financial Institutions and Professional Registration ("DIFP") will be reorganized and thereafter be known as the Department of Commerce and Insurance. This proceeding commenced under the name DIFP.

**Background**

Galen is a Missouri-domiciled Chapter 379 property and casualty stock insurance company, who was authorized to write a single line of insurance business, liability, pursuant to § 379.010.1(2), RSMo. Galen was organized as a Missouri corporation on or about December 8, 2004, for the purpose of providing medical malpractice insurance to physicians, medical professionals and stand-alone surgical centers on a claims-made basis (Certificate of Incorporation I00626573, NAIC #12361). Galen was first licensed by the Department as a property and casualty insurance company in Missouri under Chapter 379, RSMo on December 14, 2005. Galen also was authorized to write medical malpractice liability insurance in Florida, Illinois, Kansas, Maryland, and New Jersey. Policies were written on a 12-month, claims-made basis with typical limits of $1,000,000 per claim and $3,000,000 in the aggregate. Galen maintained its offices in the St. Louis area.

On September 30, 2015, the Director of the Department issued a Notice and Order of Administrative Supervision ("Order of Supervision", also known as "Administrative Supervision") under § 375.1160, RSMo based on, *inter alia*, a rapid reduction in Galen's surplus and corporate governance concerns. During Administrative Supervision, Galen management was required to obtain Department approval before engaging in certain business activities. Galen was also subject to a brief period of seizure during which the Director sought, but never secured, an order of rehabilitation in Case No. 16AC-CC00250 and WD80155. The Order of Supervision was extended several times while the Director sought an order

2

of rehabilitation and Galen's financial condition continued to decline. This Court's Liquidation Order on May 31, 2017 ("Liquidation Date") superseded the Order of Supervision whereby the Court found Galen to be insolvent and that Galen's further transaction of business would be hazardous, financially or otherwise, to its policyholders, its creditors or the public.

On May 31, 2017, this Court entered the Liquidation Order against Galen. The Court appointed Chlora Lindley-Myers, the Director of the Department and her successors in office as the Liquidator of Galen.

**State Guaranty Associations (SGAs)**

At the Liquidation Date, Galen turned over approximately 53 claims to the SGAs. The Liquidator continues to work with the SGAs to ensure the timely transfer of UDS claim records as needed. As of March 31, 2020, there were 19 open medical malpractice claims being handled by the SGAs for Illinois, Kansas, Missouri, and New Jersey.

**Early Access**

Section 375.1205, RSMo, requires "within one year of a final order of liquidation of an insurer by a court of competent jurisdiction of this state, the liquidator shall make application to the court for approval of a proposal to make early access disbursements out of marshaled assets to a guaranty association or foreign guaranty association having obligations because of such insolvency," and the "[d]isbursements to guaranty associations [shall be] in sums as large as possible." Accordingly, the Liquidator developed an Early Access Plan, which is necessary and

3

appropriate to carry out the provisions of §§ 375.1150, RSMo, *et seq.*, to assure equality in the treatment of the SGAs with respect to early access distributions, and to ensure the proper return of early access distributions if necessary to recognize the priority to be accorded all similar creditors of Galen under § 375.1218, RSMo. The Liquidator filed a Motion for Approval of Early Access Plan with this Court contemporaneously with the First Annual Report and subsequently made Early Access Distributions on October 1, 2018.

On October 16, 2019, the Liquidator filed a Periodic Application to Distribute Assets Under Early Access Plan with the Court seeking approval of early access distributions to state guaranty associations who executed an Early Access Plan. The Liquidator advised the Court that $1,125,000 was available for a distribution under the plan approved by the Court. The Liquidator requested authority to distribute $1,125,000 to the state guaranty associations who had executed an Early Access Plan. On November 27, 2019, the Court entered an Order approving the Liquidator's proposed early access distribution. The Liquidator made early access distributions to SGAs on December 4, 2019.

### Proofs of Claim

The Court established a Proof of Claim ("POC") deadline of April 30, 2018. The Liquidator received approximately 100 timely POCs from various creditors including SGAs, insureds, attorneys, and others. Two claims were received after the POC deadline.

As of the date of filing this Third Annual Report, the Liquidator adjudicated twenty-one Proofs of Claim. She advised fifteen claimants of her denial of their claims, and five of her acceptance. One claimant was advised of his partially allowed claim. Additionally, as of the date of this Third Annual Report, four claimants have been advised of the denial of their claims, but such determinations are not final until June 8, 2020 and June 15, 2020.

Two claimants filed timely objections to the Liquidator's determination. The Liquidator upheld her denial in each case and notified the Court. One claimant opted to withdraw his objection to the Liquidator's determination. For the other claimant, the Court conducted a hearing and ultimately affirmed the denial of the claim by the Liquidator.

**Litigation**

As noted in prior annual reports, Galen was engaged in a variety of litigation prior to the Liquidation Date. Most litigation has either been resolved with a settlement or approved POC.

**Operations**

From its inception to the Liquidation Date, Galen did not maintain any employees. Galen Insurance Management Company ("GIMC"), Galen's sole shareholder, and Galen were parties to a management services agreement whereby GIMC provided all staff and services to Galen and Galen paid a fee to GIMC. As of the Liquidation Date, the Liquidator disaffirmed or repudiated the management services agreement with GIMC. Initially, the Liquidator hired three GIMC

employees to be direct employees of Galen. Effective January 1, 2019, the Liquidator converted its one remaining employee to an independent contractor. By doing so, the Liquidator was able to discontinue employee benefits and payroll processing services as of December 31, 2018. The cost savings between paying an employee a salary in 2018, including benefits and payroll costs, and paying an hourly rate to an independent contractor in 2019 was $12,307.30.

After the Liquidation Date, the Liquidator reduced operating expenses. As the Galen estate continued to liquidate, the need for office space declined. Rather than enter into an annual lease, the Liquidator negotiated a continuation of an office lease on a month-to-month basis beginning July 1, 2018. Entering into a month-to-month lease allowed the Liquidator to terminate the lease as of November 30, 2018, when the office space was no longer needed. The annual savings due to rent reduction is at least $23,625.

Additionally, the Liquidator engaged an alternative information technology vendor at a savings of approximately 75% each month, which was further reduced by approximately 50% each month beginning January 2019. In 2017 and 2018, the Liquidator donated and sold the majority of Galen's furniture and equipment at liquidation prices. The only remaining assets include computer-related equipment, office furniture and coffee making equipment.

The Liquidator also determined that Galen required space to securely store records until such time that she could review and request this Court's authority to destroy records in accordance with § 375.1228, RSMo. In 2018, the Liquidator

negotiated a contract with the St. Louis Record Center for secure storage, including record retrieval and destruction services.

### Reinsurance

Prior to the Liquidation Date, Galen terminated its reinsurance contracts. Coverage may exist for one or more claims currently being managed by the SGAs. The Liquidator is monitoring the claim situation and will later determine whether pursuing reinsurance claims is financially sound given the reinsurance contract swing rate terms. With Court approval, in January 2020, the Liquidator retained the services of Conner Ash, P.C. to assist her in evaluating reinsurance issues.

### Banking

The Liquidator, with assistance of her consultant, manages and monitors the estate's assets maintained in bank accounts and investments. The Liquidator has ready access to Galen's banking professionals as Galen's banking and investment operations continue to be held at Central Bank in Jefferson City, Missouri. The Liquidator's representatives meet with representatives from Central Bank twice each calendar year to review Galen's investment portfolio and to discuss strategy and cash flow. Central Bank works with Galen's accounting consultant to provide reports and spreadsheets to assist Galen in complying with reporting requirements.

### State Licenses and Deposits

In addition to Missouri, Galen was authorized to write insurance contracts in Illinois, Florida, Kansas, Maryland, and New Jersey. The status of those state licenses and deposits is as follows:

|  | License Status | Deposit Status |
| --- | --- | --- |
| Florida | Certificate of Authority Surrendered 6/8/16 | N/A |
| Illinois | Certificate of Authority Suspended 3/28/17 | N/A |
| Kansas | Certificate of Authority "in liquidation" as of 5/31/17 | N/A |
| Maryland | Certificate of Authority "in liquidation" as of 5/31/17 | N/A |
| Missouri | Inactive | N/A |
| New Jersey | Certificate of Authority "in liquidation" as of 5/31/17 | N/A |

In 2018, the deposit account for Missouri was closed and the entire balance in the account was transferred into Galen's operating account and Galen's investment account held at Central Bank.

**Financial Reporting**

Pursuant to § 375.1190, RSMo, and in accordance with the Liquidation Order, on September 28, 2017, the Liquidator submitted to the Court a list of assets, including Fixed Assets and Cash and Other Assets.

Paragraph 10 of the Liquidation Order provides that the "Liquidator shall file periodic financial reports with the Court. Financial reports shall include, at a minimum, the assets and liabilities of Galen and all funds received or disbursed by the Liquidator during the current period. Financial reports shall be filed within one year of this Order and at least annual thereafter." Exhibit A and Exhibit B, both submitted separately for *in camera* review, are filed in accordance with paragraph

10 of this Court's Liquidation Order and in satisfaction of the Liquidator's financial reporting obligation to this Court.

The specific financial details provided in Exhibit A and Exhibit B, both submitted separately for *in camera* review, include:

Exhibit A: Statement of Assets, Statement of Liabilities, Statement of Receipts and Statement of Disbursements as of December 31, 2019.

Exhibit B: Statement of Assets, Statement of Liabilities, Statement of Receipts and Statement of Disbursements as of March 31, 2020.

May 28, 2020                                          Respectfully Submitted

/s/Shelley L. Forrest
Shelley L. Forrest
Mo. Bar No. 46455
Receivership Counsel
Missouri Department of Commerce
and Insurance
PO Box 690
Jefferson City, MO 65102
573 522-6115
Shelley.Forrest@insurance.mo.gov
Attorney for Petitioner

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically with the Clerk of the Court on May 28, 2020, to be served by operation of the Court's electronic filing system upon all counsels of record.

*/s/ Shelley L. Forrest*
Shelley L. Forrest
